Because the "leave with pay" statutes of Title 5 preclude any reduction in pay for

hours regularly scheduled, but for which the employee is charged annual or sick leave, we affirm the judgment of the Court of Federal Claims.[6]

No costs.

AFFIRMED.

GOODWALL CONSTRUCTION COMPANY and Howard P. Gooden, Plaintiffs–Appellees,

v.

BEERS CONSTRUCTION COMPANY, Defendant–Appellant.

No. 92–1338.

United States Court of Appeals, Federal Circuit.

April 12, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined June 28, 1993.

---

6. The United States Claims Court is now known as the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 1992 U.S.C.C.A.N. (106 Stat.) 4506, 4516.

Ned L. Conley, Conley, Rose & Tayon, Houston, TX, argued for plaintiffs-appellees. With him on the brief was William E. Shull.

William H. Boice, Kilpatrick & Cody, of Atlanta, GA, argued for defendant-appellant. With him on the brief were John S. Pratt, Christopher P. Bussett and Dean W. Russell.

Before MAYER, RADER, and SCHALL, Circuit Judges.

RADER, Circuit Judge.

Goodwall Construction Company and Howard P. Gooden sued Beers Construction Company for infringement of U.S. Patent No. 4,149,513, "Method of Texturing Concrete with Deep Texture Hammer," reissued as U.S. Reissue Patent No. 32,292. A jury found that Beers willfully infringed claims one through five of the reissue patent.

The United States District Court for the Northern District of Georgia denied Beers' motion to hold the patent unenforceable and denied Beers' renewed motion for judgment after trial[1] or a new trial on the issues of literal infringement, willfulness, and lost profits. In addition, the district court trebled the jury's damage award, awarded Goodwall attorney fees and costs, and granted Goodwall's motion for judgment after trial on the issue of infringement under the doctrine of equivalents. The district court also granted in part Beers' motion for a review of the taxing of costs. *Goodwall Constr. Co. v. Beers Constr. Co.*, No. 1:79–CV–1774–JOF, 1992 WL 503246 (N.D.Ga. Apr. 2, 1992). Be-

cause the record supports either the literal or the doctrine of equivalents infringement finding, this court affirms. This court, however, remands for a re-calculation of post-judgment interest.

## BACKGROUND

The reissue patent describes a method for texturing concrete surfaces. The patented process creates a rough, three-dimensional texture which substantially enhances the appearance of exposed concrete surfaces on buildings. The patented process prescribes securing a blunt-ended rod to a pneumatically-powered hammer. The hammer operator then securely forces the hammer-rod assembly against the concrete surface. As the hammer-rod assembly moves in alternate strokes across the concrete, it roughens the surface to create an aesthetic appearance.

Claims one through five of the reissue patent are identical to claims one through five of the original patent. Claim one states:

1. A method for texturing a concrete surface comprising the steps of:

A. securing a blunt-tipped moil point rod to a pneumatically-powered riveter;

B. placing the blunt tip of the blunt-tipped rod against the concrete surface to be textured;

C. applying pressure to the riveter such that the blunt tip of the blunt-tipped rod is securely forced against the concrete surface;

D. activating the riveter; and

E. after activating the riveter moving the blunt tip rod in alternate strokes across the concrete surface while retaining pressure; and

F. removing the blunt tip from contact with the surface before the blunt tip gouges the surface, whereby the concrete surface is substantially roughened.

Claims two through five are dependent claims including all steps of claim one.

---

1. In 1991, Federal Rule of Civil Procedure 50 changed the terms "motion for judgment notwithstanding the verdict" to "renewal of motion for judgment after trial," and "motion for directed verdict" to "motion for judgment as a matter of law."

In September 1977, Beers' project manager for the Southern Bell Headquarters construction project and Beers' general superintendent met with Mr. Gooden, the inventor of the patented process. They examined several examples of concrete textured according to the patented process. Mr. Gooden demonstrated his texturing method to them.

On September 22, 1977, Mr. Gooden traveled to Atlanta and textured several sample panels for Beers. On September 27, 1977, Mr. Gooden sent Beers a written quotation for $1.28 million to texture the Southern Bell Headquarters building. In his proposal, Mr. Gooden informed Beers that his "process is a patent applied method developed by Goodwall." Beers did not accept Mr. Gooden's bid, but rather decided to do the job itself. Beers informed Mr. Gooden that it had selected another texture.

In February 1979, Mr. Gooden observed texturing of the Southern Bell project. Mr. Gooden observed Beers was using his method to produce a heavy texture.

In 1979, Goodwall filed this patent infringement suit against Beers under 28 U.S.C. § 1338.[2] In November 1991, after a three week trial, a jury found that Beers willfully infringed claims one through five of the reissue patent, based upon a finding of literal infringement. The jury also awarded Goodwall lost profits. The jury did not reach the question of infringement under the doctrine of equivalents.

On post-trial motions, the district court denied Beers' motions to hold the patent unenforceable, for judgment after trial, and for a new trial. Thus, the district court upheld the jury's literal infringement finding. Recognizing the possibility of reversal on literal infringement in a case which had been under way for more than a decade, the district court also found that the tripartite test of *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94

L.Ed. 1097 (1950), had been satisfied and that recognized limitations thereto (prior art, prosecution history estoppel) would not apply. Hence, even if the claims in this case were not literally infringed, the trial court granted Goodwall's motion for judgment after trial on infringement under the doctrine of equivalents. Thus, in the interest of judicial economy and conservation of the parties' resources in this case, the district court ensured that the record on appeal presented both the jury's finding of literal infringement and the alternative finding of infringement under the doctrine of equivalents.

## DISCUSSION

This case is highly fact-specific and evidence-oriented. Therefore, Beers faces a difficult burden in attempting to persuade this court to reverse a jury verdict involving questions of fact. *In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1532, 25 USPQ2d 1241, 1244 (Fed.Cir.1992).

 On appeal of a judgment entered on a verdict, after denial of a renewed motion for judgment after trial, Beers
> must show that the jury's findings, presumed or express, are not supported by substantial evidence, or, if they were, that the legal conclusion(s) implied from the jury's verdict cannot in law be supported by those findings.

*Id.* (citing *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984)). Fact findings reviewed under the substantial evidence standard require affirmance by this court unless Beers shows that no reasonable juror could have reached such a result. *In re Hayes*, 982 F.2d at 1532–33 (citing *Perkin–Elmer*, 732 F.2d at 893; *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512–13, 220

---

**2.** In 1981, the parties entered into a "consent order" and agreed that Goodwall would file a reissue application to resolve invalidity questions. The order provided that Beers could not challenge validity in the district court if the Patent and Trademark Office reissued the pat-

ent. The United States District Court for the Northern District of Georgia stayed this action for five years during the reissue proceeding. In 1986 the patent reissued and foreclosed Beers from raising validity issues with the district court.

USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984)).

## Jury Instruction

During closing argument, Goodwall's attorney addressed evidence that concrete texturing processes before the reissue patent may have used some kind of secure force to hold the riveter against the surface:

> The mere fact that the amount of force had been used before, that's not—the hammer had been used before, too, so had a flat pointed bit been used before. Nobody said those were new. The thing that was new was putting them together and that's what we patented, and that's what Beers did.

Beers viewed this statement as inconsistent with Goodwall's position before the Patent and Trademark Office that the prior art's "firm" pressure differed from "securely forced" pressure. Therefore, Beers requested the trial court to issue a curative instruction advising the jury that Goodwall admitted the invalidity of its reissued patent. In addition, Beers requested the court to hold the patent unenforceable due to inequitable conduct.

In denying Beers' motions, the district court held that the parties' consent order foreclosed Beers from raising this validity issue. *See supra* note 2. In addition, the court determined that Goodwall's purported admission did not alter the patentability of the reissue patent's combination of process steps:

> At the time the patent was reissued, the process was not obvious. That was the finding of the PTO and the court, and nothing in plaintiffs' closing arguments changes these findings.

*Goodwall*, No. 1:79–CV–1774–JOF, slip op. at 25. Therefore, the district court denied Beers' motions.

■ To obtain a remand for faulty jury instructions, Beers must prove (1) that the jury instructions, when read in their entirety, were incorrect, and (2) that its alternative instructions could have cured the error. *Biodex Corp. v. Loredan Biomedi-*

*cal, Inc.*, 946 F.2d 850, 854, 20 USPQ2d 1252, 1255 (Fed.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992). Beers did not show that the district court's instructions were wrong.

■ The district court found that Goodwall did not change positions on the meaning of the "securely forced" limitation. The court also found that Goodwall's closing argument did not affect the validity or enforceability of its reissued patent. Because unaware of any use of pressure in the prior art, for instance, Goodwall did not intentionally withhold information from the PTO—a prerequisite of inequitable conduct. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389, (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). This court agrees with the trial court's findings.

Because Goodwall's closing argument did not affect the validity or enforceability of its patent, the district court had no obligation to issue a curative instruction. Moreover the parties' consent order clearly and unambiguously foreclosed introduction of validity issues at trial. This court thus affirms the district court's denial of Beers' motions.

## Literal Infringement

In reaching its verdict of infringement, the jury determined that Beers' texturing method used (1) a "pneumatically-powered riveter," (2) a "blunt-tipped moil point rod," and (3) the "securely forced" pressure method of claim one. Upon renewal of the motion for judgment after trial, the court reconsidered the claims and upheld the jury's infringement verdict.

### Pneumatically-powered riveter

■ Claim one of the reissue patent claims use of a pneumatically-powered riveter. Beers' accused process used a chipping hammer. The record amply supports the finding that the accused chipping hammer falls within the meaning of the claims.

Although claim one designates a method with a pneumatically-powered riveter, the specification repeatedly refers more gener-

ally to a pneumatically-powered hammer. For instance, column 2, line 6, mentions a "pneumatic riveting gun", column 3, lines 7–8, a "pneumatically-powered jackhammer," and column 3, line 10, a "jack-hammer." In addition, the specification states that "any pneumatically-powered jackhammer may be used so long as it produces substantially the same high power strokes at substantially the same frequency as that produced by the embodiment described in detail." Reissue patent, at column 6, lines 42–46.

Moreover, the prosecution history shows that Goodwall used the term "riveter" to describe the type of tool adapted into a different use and structure by the new process. The prosecution history disclosed as well that the adapted riveter had a different structure and use than a standard riveter.

In sum, in reading "riveter" in light of the specification and prosecution history, the court and the jury had ample support for including a chipping hammer within that term. Beers adapted its pneumatically-powered hammers for texturing concrete precisely as described in the reissue patent. The record fully supports inclusion of adapted chipping hammers within the pneumatically-powered riveter limitation of the claims.

### Blunt-tipped moil point rod

■ Claim one of the reissue patent claims the use of a blunt-tipped moil point rod to texture concrete. Beers' accused process used a chisel blank. The record amply supports the finding that chisel blanks fall within the blunt-tipped moil point rod limitation.

The rod defined in the claims has two ends. One end of the rod extends into the barrel of the pneumatically-powered hammer; the other end extends outward and engages the concrete surface. The specification again describes in general terms the rod used to texture concrete:

an elongated piece of solid steel having tapered end 49 of circular cross section with blunt tip 50, middle section 51 of square cross section and cylindrical [blund] *blunt* end 53 having blunt tip 54.

. . . .

the moil point may have additional shoulders for retaining it in the upper sleeve.[3]

Reissue patent, at column 3, lines 32–35; column 6, lines 46–47. The prosecution history also emphasized that the important feature of the rod was its blunt end.

Reading "blunt-tipped moil point rod" in light of the specification and prosecution history, the court and jury had ample support for including a chisel blank within that term. Beers adapted the chisel blank to achieve the blunt end necessary for the patented process. The record fully supports inclusion of chisel blanks within the "blunt-tipped rod" limitation.

### Securely forced pressure

■ Claim one of the reissue patent claims the application of securely forced pressure to ensure that the hammer properly textures the concrete. Beers argued that its method did not use securely forced pressure. The jury had before it videotapes of Beers' workers texturing concrete. Therefore the jury directly compared Beers' method with the claims. Mr. Gooden, the inventor of the patented process, testified about his observations of Beers' workers practicing the patented method. The record, therefore, supports the finding that Beers practiced the securely forced limitation.

### The Verdict Form and Rule 49(a)

The court's verdict form gave the jury five blanks to answer "yes" or "no" to literal infringement of each of the five claims and five more blanks to answer "yes" or "no" to infringement under the doctrine of equivalents. The court's instructions, however, prevented the jury from answering to the doctrine of equivalents if it found literal infringement. The special verdict form instructed the jury:

Place "yes" or "no" in each blank. If you find literal infringement of all steps,

---

**3.** Matter enclosed in brackets [ ] appears in the original patent but forms no part of the reissue specification; matter underlined indicates the additions made during reissue.

then the answer in the "equivalents" column would be "no."

In addition, the court orally instructed the jury:

> You've got to give me a yes or a no in every one of these blanks. What this means is you look at claim 1, and you decide if the evidence has convinced you that Beers infringed claim 1 literally. And if the evidence convinces you of that, you write in yes. And since you haven't used the Doctrine of Equivalents at all, then the answer in this column is no.

The jury answered "yes" to literal infringement on each claim. Then, as instructed, the jury answered "no" to infringement under the doctrine of equivalents.

On post trial motions, the district court determined that the jury instructions had precluded the jury from finding infringement under the doctrine of equivalents:

> [T]he court finds that the clear and precise meaning of the charge and accompanying instructions to the jury precluded any possibility of the jury finding infringement under the doctrine of equivalents once the jury had reached a finding of literal infringement.... Therefore, the jury verdict expresses no opinion as to Beers' potential infringement of the Gooden patent under the doctrine of equivalents.

*Goodwall*, No. 1:79–CV–1774–JOF, slip op. at 20 (citation omitted). Under Federal Rule of Civil Procedure 50(b) (1988), the district court granted Goodwall's motion and found infringement under the doctrine of equivalents. As stated above, the district court addressed the doctrine of equivalents out of concern for possible reversal on literal infringement.

■ The instructions prevented the jury from reaching the doctrine of equivalents questions. In ruling on the post-trial motions, the court found: "the clear and precise meaning of the charge and accompanying instructions to the jury precluded any possibility of the jury finding infringement

under the doctrine of equivalents once the jury had reached a finding of literal infringement." Therefore, the district court properly acted, but should have invoked Fed.R.Civ.P. 49(a), rather than Rule 50(b).

Rule 49(a) states that if, when it employs special interrogatories,

> the court omits any issues of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding....

In this case, the court's instructions, in effect, omitted the issue of infringement under the doctrine of equivalents once the jury found literal infringement. Because neither party objected to this approach, both parties waived the right to a jury trial on infringement under the doctrine of equivalents if the jury found literal infringement. Under these circumstances, Rule 49(a) was the appropriate vehicle for the court to use. *Therrell v. Georgia Marble Holdings Corp.*, 960 F.2d 1555, 1563 (11th Cir.1992) (where neither party demands that an issue be presented to the jury, the parties consent to the court acting as a trier of fact on that issue and the court "[does] not issue the equivalent of a directed verdict"). Also, a court may enter judgment under Rule 49(a) when a jury answers some but not all verdict interrogatories and the jury's answers dispose of the case. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553–54, 10 USPQ2d 1201, 1208 (Fed.Cir.1989). In other words, a motion on an issue unresolved by the jury is a motion for judgment under Rule 49(a), not Rule 50(b). *See Wahpeton*, 870 F.2d at 1554.

## Doctrine of Equivalents

■ In the alternative, the trial court found infringement under the doctrine of equivalents.[4] Infringement under the doc-

---

**4.** Under its Rule 50(b) approach, the district court concluded that a reasonable jury would have found infringement under the doctrine of

equivalents, had it considered the issue. Implicit in that Rule 50(b) conclusion is a finding of

trine of equivalents requires a showing that the accused process performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claims. *See Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1325, 21 USPQ2d 1161, 1165 (Fed.Cir. 1991) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)), *cert. denied,* —— U.S. ——, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992). Substitution of an equivalent of the recited limitation may satisfy the "substantially the same way" prong of the test. *Malta*, 952 F.2d at 1325; *see Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1261, 9 USPQ2d 1962, 1969 (Fed.Cir.1989).

■ The district court determined that all limitations contained in the claims were present in Beers' accused process by substantially equivalent steps. *See Goodwall*, No. 1:79–CV–1774–JOF, slip op. at 21. The district court then properly conducted the *Graver Tank* tripartite test. The trial court found substantially the same function: "[B]oth processes relate to a method of texturing concrete.... [T]he processes merely use different parts to produce the same function." *Goodwall*, No. 1:79–CV–1774–JOF, slip op. at 20 n. 2. Next the court found that Beers' method textured concrete in substantially the same way as the claims. Finally, the court found substantially the same result: "At a minimum a finding of infringement under the doctrine of equivalents is warranted, given Beers' equivalent use of each claim of Gooden's patent to achieve substantially the same results." *Id.* at 21–22.

The district court also correctly determined that the file history did not unduly limit the reissue patent's range of equivalents. Rather the court discerned that a chipping hammer and a chisel blank fell within the range of equivalents for a riveter and a moil point rod. *Id.* at 21.

In addition, the court found that "great injustice would result" if it did not grant Goodwall's renewed motion for judgment. *Id.* at 22. The court stated that this "case

such infringement, applicable as well under a

is already twelve years old, and no one wants to see it continue any longer than absolutely necessary to see justice served." *Id.* at 22–23.

Mr. Gooden testified that the accused process operated no differently than the claimed process. The evidence also included video tapes of the accused process. On the basis of the record, this court discerns no clear error in the trial court's finding that a chipping hammer is substantially equivalent to a pneumatically-powered riveter, that a chisel blank is substantially equivalent to a blunt-tipped moil point rod, and that the accused method is substantially equivalent to the securely forced pressure limitation.

### Willful Infringement and Increased Damages

■ The district court trebled the jury's lost profits award. Under 35 U.S.C. § 284 (1988), a court "may increase the damages up to three times the amount found or assessed." This court leaves the decision whether to award increased damages to the sound discretion of the trial court. *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942, 18 USPQ2d 1707, 1709 (Fed.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991). A finding of willfulness justifies, but does not compel, an award of enhanced damages. *State Indus., Inc. v. Mor–Flo Indus., Inc.*, 948 F.2d 1573, 1576, 20 USPQ2d 1738, 1740 (Fed.Cir.1991).

■ The district court first determined that "the jury finding of willfulness was reasonable and supportable based upon the record evidence presented." *Goodwall*, No. 1:79–CV–1774–JOF, slip op. at 28. Indeed, the record supported the inference that Beers willfully copied Goodwall's patented process. Moreover the record disclosed Beers' attempt to conceal information from its patent attorney when seeking an infringement opinion. This court detects no abuse of discretion by the district court in its trebling of damages.

Rule 49 approach.

## Attorney Fees

The district court awarded Goodwall attorney fees and costs. *See Goodwall,* No. 1:79–CV–1774–JOF, slip op. at 27–56. Neither party challenges the cost award or the amount of the attorney fees award. Beers, however, asks this court to vacate the attorney fees award because the district court did not use the word "exceptional" in its opinion. This court declines Beers' suggestion to exalt form over substance.

Section 285 of the Patent Act states:

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

35 U.S.C. § 285 (1988). Section 285 does not require the district court to specifically use the word "exceptional" when awarding attorney fees. Rather, this court has stated:

Though findings on "exceptional case" and reasons underlying the discretionary action on fees are helpful to an appellate court, remand should not be a matter of rote in every case in which findings and reasons are not expressly set forth. An appellate court need not close its eyes to the record where, as in this case, there is a way clearly open to affirm the district court's action.

*Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 814, 15 USPQ2d 1481, 1488–89 (Fed.Cir.1990).

The district court performed an extensive analysis in arriving at its attorney fees and cost award. For instance, the court upheld the jury's finding of willfulness and trebled damages "to punish the defendant for its actions." *Goodwall,* No. 1:79–CV–1774–JOF, slip op. at 28; *see S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 200, 228 USPQ 367, 368 (Fed.Cir.1986) (This court upholds attorney fee awards in cases featuring willful infringement.). This court detects no abuse of discretion in the district court's award of attorney fees and costs to Goodwall.

## Post–Judgment Interest

Goodwall concedes that the district court erred in its choice of an interest rate to calculate post-judgment interest. The district court set the rate of post-judgment interest at:

the prime rate effective from time to time as set forth in the Federal Reserve Bulletin plus two percent, compounded annually from the date of this judgment.

*Goodwall Constr. Co. v. Beers Constr. Co.,* No. 1:79–CV–1774–JOF, slip op. at 3 (N.D.Ga. Apr. 28, 1992) (Final Judgment). This rate, however, is contrary to the statutory rate of 28 U.S.C. § 1961(a) (1988):

[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

*See also Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 840, 110 S.Ct. 1570, 1578, 108 L.Ed.2d 842 (1990) (Where Congress has set a definite interest rate under section 1961(a), the courts may not choose to the contrary.). Therefore, this court vacates the original award of post-judgment interest and remands to the district court for a calculation in accordance with this opinion.

## CONCLUSION

For the above stated reasons, this court affirms the district court's judgment of willful infringement and award of lost profits. This court also affirms the district court's award of enhanced damages, attorney fees, and costs. Because the district court applied the wrong rate, however, this court remands for a proper determination of post-judgment interest.

## COSTS

Each party shall bear its own costs for this appeal.

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.