**L.E.A. DYNATECH, INC.,**
**Plaintiff/Counterdefendant/Appellee,**

v.

**Edward F. ALLINA and Meter Treater,**
**Inc., Defendants/Counterplaintiffs–**
**Appellants.**

Nos. 93–1353, 94–1290.

United States Court of Appeals,
Federal Circuit.

Feb. 17, 1995.

Rehearing Denied; Suggestion for
Rehearing In Bank Declined
May 5, 1995.

Thomas L. Creel, Kaye, Scholer, Fierman, Hays & Handler, New York City, argued, for plaintiff/counterdefendant/appellee. With him on the brief was Daniel P. DiNapoli.

Allen M. Sokal, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, argued, for defendants/counterplaintiffs-appellants. With him on the brief was Donald R. Dunner. Also on the brief was John W. Logan, Ferrill, Logan, Johns & Blasko, Willow Grove, PA.

Before MAYER, RADER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge RADER. Concurring in part and dissenting in part opinion filed by Circuit Judge SCHALL.

RADER, Circuit Judge.

The United States District Court for the Middle District of Florida dismissed without prejudice Edward F. Allina and Meter Treater, Inc.'s (collectively Meter Treater) infringement suit against L.E.A. Dynatech, Inc. (LEA). *L.E.A. Dynatech, Inc. v. Allina,* No. 91–CV–219, Order (M.D.Fla. Apr. 30, 1993) (*April 1993 Order*). The district court also awarded attorney fees and costs to LEA. *Id.* The district court assessed the fee award at $537,541.60. *L.E.A. Dynatech, Inc. v. Allina,* No. 91–CV–219, Order (M.D.Fla. Feb. 4, 1994) (*February 1994 Order*). The district court then entered final judgment. *L.E.A. Dynatech, Inc. v. Allina,* No. 91–CV–219, Order (M.D.Fla. Apr. 14, 1994) (*April 1994 Order*). Meter Treater appeals the dismissal and award of attorney fees and costs, as well as the amount of the fee award. Because the district court did not abuse its discretion in dismissing without prejudice and awarding attorney fees and costs, and because Meter Treater untimely objected to the award, this court affirms.

## BACKGROUND

In February 1991, LEA filed suit against Meter Treater seeking a declaratory judgment of noninfringement and unenforceability of five patents owned by Meter Treater. Meter Treater counterclaimed for infringement of United States Patent No. 4,931,895 (the '895 patent). In November 1991, Meter Treater filed a reissue application on the '895 patent, adding claims to initiate an interference with a third party. Meter Treater did not inform the district court or LEA of its application for reissue.

When LEA learned of the reissue application in February 1992, it moved to stay the district court case. LEA sought the stay to avoid unnecessary and duplicative discovery and to minimize trial preparation. Meter Treater vigorously opposed the motion. The district court denied LEA's motion to stay in March 1992. Discovery proceeded.

In June 1992, the examiner at the United States Patent and Trademark Office rejected all the claims in the reissue application, including the claims as originally filed. In September 1992, seven months after Meter Treater opposed LEA's motion for a stay, and just before the pre-trial conference, Meter Treater moved to stay pending completion of the reissue proceeding. LEA opposed the motion and urged that the case proceed to trial. In the alternative, LEA asked for dismissal without prejudice, as well as attorney fees and costs. The district court did not rule on Meter Treater's motion.

In April 1993, after learning that the examiner had issued a Final Office Action rejecting all the claims of the '895 patent, LEA again moved to dismiss without prejudice and for attorney fees and costs. Meter Treater opposed LEA's motion to dismiss, but did not respond to the request for fees.

The district court dismissed all claims and counterclaims in the litigation without prejudice.[1] *April 1993 Order.* The district court also awarded attorney fees and costs accruing from March 6, 1992, the date the district court denied LEA's motion to stay. *Id.* Meter Treater appealed to this court in May 1993. In August 1993, this court stayed the appeal pending the district court's calculation of the fee award.

In February 1994, the district court directed Meter Treater to pay LEA $537,541.60 in fees and costs. *February 1994 Order.* LEA then moved for entry of final judgment. Meter Treater responded by moving to amend or vacate the *April 1993 Order.* Meter Treater also opposed entry of final judgment. Meter Treater raised, for the first time, objections to the district court's fee award in its supporting memorandum, asserting, *inter alia,* that the fee award would bankrupt it.

On April 14, 1994, the district court denied Meter Treater's motion to amend and entered final judgment. *April 1994 Order.* Meter Treater then appealed. Also before this court is Meter Treater's May 1993 appeal, because the district court's entry of final judgment lifted this court's earlier stay.

1. It is unclear from the record on appeal whether the district court dismissed LEA's patent declaratory judgment action in the *April 1993 Order* or in an earlier order of the court.

## DISCUSSION

■ This court reviews a dismissal without prejudice only for an abuse of discretion. *See Link v. Wabash R.R.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). This court applies the law of the pertinent regional circuit, here the Eleventh Circuit, on this procedural question. *See Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 856, 20 USPQ2d 1252, 1258 (Fed.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2957, 119 L.Ed.2d 579 (1992). This court also reviews an award of attorney fees and costs under the highly deferential abuse of discretion standard. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991); *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 124, 220 USPQ 707, 709 (Fed.Cir.1984). A district court abuses its discretion when it makes an error of law, or a clear error of judgment, or exercises its discretion on findings which are clearly erroneous. *J.P. Stevens Co. v. Lex Tex, Ltd.*, 822 F.2d 1047, 1050 (Fed.Cir.1987).

### I.

■ A district court has the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Incident to this power is the court's ability to dismiss a lawsuit. *See Dynes v. Army Air Force Exchange Serv.*, 720 F.2d 1495, 1499 (11th Cir.1983) (citing *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir.1983)).

■ When LEA moved to dismiss in April 1993, Meter Treater's reissue application had been pending for seventeen months. The examiner had rejected all claims of the '895 patent in a Final Office Action. The duration of an appeal of the final rejection was indefinite, and the outcome of such an appeal unclear. Meter Treater itself had switched its position to favor a stay in the district court proceedings.

In this factual setting, several policies supported the district court's dismissal without prejudice. The dismissal removed the case from the district court's docket pending the agency appeal. The dismissal also preserved the resources of the court and the parties by preventing further discovery and litigation on claims which might not survive the reissue. In addition, the dismissal eliminated any prejudice to LEA from the bare existence of the infringement suit. Finally, the dismissal without prejudice left undisturbed Meter Treater's opportunity to enforce any patent claims surviving the reissue process.

■ Moreover, dismissal without prejudice may operate as an alternative to a stay of proceedings. *Hill v. Victoria County Drainage Dist.*, 441 F.2d 416, 417 (5th Cir.1971) (court dismissed without prejudice rather than staying case because "to prematurely resolve the alleged federal constitutional problems might well be a waste of time")[2]; *see Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.*, 804 F.2d 129, 132 n. 5, 231 USPQ 653, 655 n. 5 (Fed.Cir.1986). In September 1992, Meter Treater itself moved to stay the district court proceedings pending conclusion of the reissue examination. Dismissal without prejudice in effect stayed the proceedings, just as Meter Treater desired. In fact, Meter Treater today would accept dismissal without prejudice, absent the fee award, as an alternative to the *April 1993 Order.* Given these considerations, and the wide berth that district courts must have in controlling their dockets, this court cannot conclude that the district court abused its discretion by dismissing without prejudice.

### II.

■ District courts possess inherent power to assess attorney fees as a sanction when a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers,* 501 U.S. at 45–46, 111 S.Ct. at 2133–34. In addition to dismissing the lawsuit, the district court here ordered Meter Treater to "pay to [LEA] all costs, including attorneys fees, incurred by [LEA] from the time that

2. The Eleventh Circuit adopted as binding precedent all decisions rendered before October 1, 1981, by the former Fifth Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (in banc).

this Court denied [LEA's] MOTION TO STAY on March 6, 1992." *April 1993 Order.* Although the district court did not state the specific basis for its fee award, sufficient record evidence supports the award. *See Goodwall Constr. Co. v. Beers Constr. Co.,* 991 F.2d 751, 759, 26 USPQ2d 1420, 1426–27 (Fed.Cir.1993) (this court need not remand for explicit fact findings if sufficient record evidence supports an award of attorney fees).

In March 1992, Meter Treater opposed LEA's motion to stay pending completion of the reissue proceedings. Based on Meter Treater's arguments, the district court denied the motion. Discovery proceeded. LEA incurred substantial expense on depositions and other discovery after March 1992. Following the reissue examiner's June 1992 rejection of the original claims of the '895 patent, Meter Treater reversed its position and moved to stay pending completion of the reissue proceedings. Meter Treater filed this motion virtually on the eve of trial.

The record shows that Meter Treater manipulated the timing of court proceedings to suit its own interests. When confident of the force of its original patent claims, Meter Treater urged swift trial proceedings. Then, after the reissue examiner's rejection of the original claims, Meter Treater did an about-face. Uncertain of the strength of its patent, Meter Treater moved to stay the litigation. Meantime, LEA had to incur substantial expenses in preparation for trial.

The district court tailored the award to Meter Treater's period of manipulation. The fees span the period from March 6, 1992— the date that the district court denied LEA's motion to stay—through the date of the *April 1993 Order.* Based on the record facts, the district court could have reasonably found that Meter Treater used the litigation to impose expenses on a competitor and to gain an advantage in the marketplace. The district court did not abuse its discretion in awarding fees for Meter Treater's misconduct.

■ Meter Treater asserts, however, that the fee award would cause bankruptcy, effectively precluding it from ever receiving a hearing on the merits. Thus, says Meter Treater, the fee award "converts" the dismissal without prejudice into one with prejudice, subject to a stricter standard of review. The sanction of dismissal with prejudice requires significant misconduct and lack of appropriate lesser sanctions. *See Mingo v. Sugar Cane Growers Co-op,* 864 F.2d 101, 102 (11th Cir.1989).

■ Even if accurate (the record does not conclusively show that bankruptcy will foreclose enforcement of legitimate intellectual property rights by Meter Treater's successor in interest), Meter Treater's arguments come too late. An appellate court generally will consider only issues presented to the district court. *Kendrick v. Jefferson County Bd. of Educ.,* 932 F.2d 910, 914 (11th Cir.1991); *McGinnis v. Ingram Equip. Co.,* 918 F.2d 1491, 1495 (11th Cir.1990); *see Formby v. Farmers & Merchants Bank,* 904 F.2d 627, 634 (11th Cir.1990). Meter Treater did not timely protest the fee award to the district court. Instead, Meter Treater appealed the dismissal without ever raising the fee question to the district court. The appeal divested the district court of jurisdiction over the fee award. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam) (filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case involved in the appeal). Thus, unless Meter Treater meets an exception to the general rule against raising issues for the first time on appeal, this court will not entertain Meter Treater's objections.

■ An appellate court will consider an issue not presented below only if: (i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the proper resolution is beyond any doubt; (iii) the appellant had no opportunity to raise the objection at the district court level; (iv) the issue presents "significant questions of general impact or of great public concern[;]" or (v) the interest of substantial justice is at stake. *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360–61 (11th Cir.1984); *see also Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1575 (Fed.Cir.1992). Meter

Treater's untimely fee protest does not qualify for any of these exceptions.

■ The district court did not abuse its discretion by awarding fees to LEA. Accordingly, the first and second exceptions do not apply. Nor does the third, because Meter Treater could have raised the fee award to the district court on several occasions. LEA sought attorney fees and costs in its April 1993 motion to dismiss. Yet, Meter Treater did not object to the award in its response to LEA's motion or in subsequent communications with the district court. In fact, Meter Treater did not object until March 1994—nearly a full year after the *April 1993 Order.* Admittedly, Meter Treater did not know of the extent of the award before the *February 1994 Order.* However, Meter Treater had adequate opportunities to object to the basis for the award itself or to move the district court to reconsider its *April 1993 Order* before appealing. As to the fourth exception, Meter Treater's untimely appeal does not raise a significant question of general impact or great public concern. Finally, this appeal does not call into question some interest of substantial justice. Meter Treater chose not to protest the fee award until after the district court lost jurisdiction over the issue, depriving the district court of the opportunity to recognize Meter Treater's straitened financial condition. Under these circumstances, for this court to consider the issue would allow Meter Treater to evade district court consideration. This court does not choose to encourage such evasions.

Therefore, the district court did not abuse its discretion in dismissing without prejudice and awarding fees and costs.

## COSTS

Each party shall bear its own costs.

## AFFIRMED.

SCHALL, Circuit Judge, concurring in part, dissenting in part.

I agree that the district court did not abuse its discretion when it dismissed Meter Treater's[1] infringement action without prejudice. However, my reasons for affirming the dismissal differ somewhat from those of the majority. I believe that the district court took the action it did because it was persuaded by LEA's argument, set forth in its April 8, 1993 motion papers, that the existence of an infringement suit pending against it (even if stayed) damaged its business. I also believe that the district court was persuaded by LEA's argument that Meter Treater would not be prejudiced if the case, instead of being stayed, was dismissed without prejudice. These are both valid considerations, so I do not think the district court abused its discretion in taking action based upon them.

I respectfully dissent, however, from Part II of the majority opinion. In my view, the district court abused its discretion in imposing the fee-shifting sanction against Meter Treater. I do not believe that the necessary factual finding of bad faith or abuse of the judicial process, which I will presume to have been made by the district court, is supported by the record. In addition, I believe that the district court's imposition of the sanction was premature, given that an appeal involving the reissue application was, and is still, pending.

## DISCUSSION

I agree with the majority that, in imposing the fee-shifting sanction, the district court apparently relied upon its inherent authority to do so for bad-faith litigation conduct. The Supreme Court, in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), held that a federal court has this inherent authority, even where the conduct at issue does not come within a statute or court rule providing for sanctions. *Id.* at 45–51, 111 S.Ct. at 2133–36. This inherent fee-shifting authority, however, is limited to situations where there is bad faith or an abuse of the judicial process. *Id.* at 45–46, 111 S.Ct. at 2133–34; *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Amsted Indus. Inc. v.*

---

1. Like the majority, I refer to Meter Treater, Inc. and Edward F. Allina collectively as "Meter Treater."

*Buckeye Steel Castings Co.,* 23 F.3d 374, 378, 30 USPQ2d 1470, 1473 (Fed.Cir.1994). The "bad-faith" limitation "derives from [the Supreme Court's] jurisprudence regarding the so-called American Rule, which provides that the prevailing party must bear its own attorney's fees and cannot have them assessed against the loser." *Chambers,* 501 U.S. at 59, 111 S.Ct. at 2140 (Scalia, J., dissenting) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)).

I recognize that the imposition of a fee-shifting sanction under a court's inherent authority is reviewed on appeal under the abuse of discretion standard. However, the exercise of such discretion must rest upon the existence of the type of bad faith contemplated in *Chambers.* Like the majority, I presume that the district court made a finding of bad faith on the part of Meter Treater. We review that finding under the clearly erroneous standard. *J.P. Stevens Co. v. Lex Tex, Ltd.,* 822 F.2d 1047, 1050, 3 USPQ2d 1235, 1237 (Fed.Cir.1987). As part of that review, it is necessary to consider the underlying course of events in this case.

When Meter Treater opposed LEA's request for a stay in 1992, it explained to the district court why it believed the case should proceed. Specifically, Meter Treater explained that it had filed the reissue application solely for the purpose of adding claims from a third party's patent so as to provoke an interference with that party. Meter Treater further explained that, while the application which resulted in the '895 patent was pending in the Patent and Trademark Office, the third party had copied confidential information from the application and later secured patent claims that it was not entitled to receive. Although conceding that the original claims (the claims-in-suit) were also technically subject to rejection in the reissue proceeding, Meter Treater said that it did not expect that the original claims would be affected by the reissue, given that it was not seeking reexamination of any original claim. Finally, Meter Treater pointed out that its reissue application was not one which was filed so that newly discovered prior art could be considered. Thus, it argued, the case did not present a situation where the legal scope of the original claims was likely to be substantially different after reissue. In denying LEA's motion for a stay, the court apparently accepted Meter Treater's representations.

We know, of course, that the reissue proceeding turned out differently than Meter Treater had predicted. The original claims were affected by the reissue. The claims were rejected, and now that rejection is on appeal to the Board of Patent Appeals and Interferences (Board). In its April 8, 1993 motion to dismiss without prejudice following the Examiner's rejection, LEA strongly implied to the district court that Meter Treater had misled the court in 1992 when it opposed the stay request, and it argued that Meter Treater should be required to reimburse it for the expenses it incurred for the period after Meter Treater's opposition.

On April 28, 1993, Meter Treater responded to LEA's motion by reminding the district court of its rationale as to why it had previously opposed the stay. In addition, it represented to the district court that the Examiner in the reissue proceeding had rejected the original claims contra to a decision of the Board made during the original prosecution. In that regard, Meter Treater asserted that the Board's reversal in the original prosecution involved this same Examiner and a similar rejection to the one now presented. Thus, on appeal Meter Treater tells us that the rejection of the original claims was "unexpected."

In its April 30, 1993 order, the district court did not specify the factual basis for its imposition of the fee-shifting sanction. Nevertheless, it is quite clear that the court imposed the sanction because it believed that it had been misled by the statements of Meter Treater made during its opposition to the stay in 1992, and also because it did not favorably view Meter Treater's flip-flop of position following the rejection of the claims. However, taking Meter Treater's representations as to the purpose and nature of its reissue proceeding at face value—and I have

no reason to do otherwise[2]—I do not believe that the record supports a finding that Meter Treater was guilty of the kind of bad faith or abusive conduct that is required under *Chambers.*

As a preliminary matter, it is true that, prior to the time it filed its notice of appeal, Meter Treater did not state to the district court *in haec verba* that it objected to the fee-shifting sanction. However, Meter Treater, in its April 28, 1993 response, did provide the court with the explanations discussed above, which explanations were provided to illustrate to the court that it had acted in good faith. Therefore, I believe that it can fairly be said that Meter Treater timely objected to the sanction, despite its failure to say: "We object to the shifting of fees."

Turning to the merits, I am unable to agree with the proposition that, in urging that the case proceed while the reissue proceeding was pending, Meter Treater was acting in bad faith or was abusing the judicial process.

To begin with, I know of no per se rule that a litigation must be stayed during the pendency of a reissue proceeding. Moreover, in view of the nature and purpose of the reissue application, I do not think that it was unreasonable for Meter Treater to tell the district court that the original claims were unlikely to be affected by the reissue proceeding. This was not a reissue application prompted by the discovery of prior art, where the patent owner is trying to have the scope of the claims limited. *See, e.g., Howes v. Medical Components, Inc.,* 814 F.2d 638, 645, 2 USPQ2d 1271, 1275 (Fed.Cir.1987). It also was not a reissue application by a patent owner who wished to bring an infringement action but whose claims did not reach the alleged infringement and who stated to the PTO that during the original prosecution he did not claim all to which he was entitled and that thus the claims should be broadened. *See* 35 U.S.C. § 251 (1988) (allowing a patent owner to enlarge the scope of claims by reissue, but only if the reissue application is filed within two years from the grant of the

original patent). In both of those situations, the scope of the original claims will no doubt be affected by the reissue proceeding, and it may well make sense to hold up the litigation.

The present reissue is of quite a different variety, though. Again, the sole reason it was filed was to add claims of a third party's patent so as to provoke an interference with the third party. Further, a rejection of the claims during their original prosecution was reversed by the Board. One would expect that under these circumstance the original claims very likely would not be affected by the reissue proceeding. In short, if there ever was a case where a strong argument could be made for not holding up litigation during a reissue proceeding, this would seem to be the one. I therefore do not believe that the evidence of record supports a finding that Meter Treater—who did not initiate this lawsuit—intentionally misled the court (and thus abused judicial process) when it opposed the stay.

In addition, I do not believe that Meter Treater should be faulted for switching its earlier position and urging a stay once the claims were rejected in the reissue proceeding. Although this change of position was certainly in Meter Treater's own interest, in my view it can also fairly be said to have been a prudent suggestion. There now appeared to be a serious question as to whether the case would ever need to be tried, and even if such a need eventually came about, it was uncertain what the scope of the claims at issue would be. Under these circumstances, it was proper for Meter Treater to support a stay of the case. In sum, I do not believe that the record supports the district court's presumed finding of bad faith or abuse of the judicial process.

Finally, at the time the district court ruled on LEA's motion to dismiss, the reissue proceeding had not been resolved. Indeed, as far as we know, it still has not been resolved. Meter Treater's appeal of the Examiner's rejection still is pending before the Board. Under these circumstances, I think it was

---

**2.** On appeal, LEA does not contest the purpose and nature of Meter Treater's reissue application. In addition, I note that we have before us no prosecution history material from either the reissue proceeding or the original application.

premature for the district court to impose the fee-shifting sanction. After all, what happens if Meter Treater eventually prevails, and the claims are issued? Then, the Examiner will have been found to have been in error, and Meter Treater's original prediction will have been proved correct. Under those circumstances, what would be the basis for the imposition of the fee-shifting sanction? At the very least, a crucial factual predicate for the district court's action will have been eliminated. In any event, assuming for the moment that Meter Treater does not prevail before the Board or upon a subsequent appeal, until the reissue proceeding is completely resolved, there is no way for a court to know whether the attorney fees and other expenses incurred by LEA were unnecessary.[3] I do not suggest that a fee-shifting sanction is required to have some causal link to the abuse which took place. Indeed, a fee-shifting sanction, like any sanction, is punitive in nature. However, where, as appears to be the case here, the district court tailors the sanction so as to cover fees and expenses that would not have been incurred had it not been for the alleged abuse, I believe it is necessary to determine whether, and to what extent, the fees were unnecessarily incurred by the aggrieved party.

## CONCLUSION

For the foregoing reasons, I believe that the district court abused its discretion in assessing attorney fees against Meter Treater. I would remand so that the issue of shifting fees could be considered at some appropriate time in the future.

---

3. For example, if there are further proceedings in this case, it may well turn out that LEA's expenditures for discovery and trial preparation were not in vain.