104 F.3d 376
 41 U.S.P.Q.2d 1792
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Alex R. BELLEHUMEUR, Plaintiff-Appellant,
v.
J.B. MARKETING, INC. and Jerome Bonnett, Defendants-Appellees.
 No. 96-1236.
 United States Court of Appeals, Federal Circuit.
 Dec. 26, 1996.
 
 Before LOURIE, CLEVENGER, and SCHALL, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Alex R. Bellehumeur appeals from the judgment of the United States District Court for the Central District of California awarding him $12,001.50 as compensation for the infringement of U.S. Patent 5,275,410 by J.B. Marketing, Inc. and Jerome Bonnett (collectively "Bonnett"), and also holding that a modified version of the accused product does not infringe that patent. Because the district court abused its discretion in calculating damages, but did not otherwise err in its judgment, we affirm-in-part and modify the court's judgment.
 
 DISCUSSION
 
 2
 The '410 patent discloses a puck for use in roller hockey, which is played on a non-ice surface such as concrete or asphalt. It improves upon prior art ice hockey pucks, which do not slide well on a non-ice surface and which can injure players who do not wear adequate protective gear. An embodiment of the puck disclosed in the patent is shown in Figure 1 reproduced below. The puck (10) has a central member (14) connected to an outer ring (26) by arms (16-18). Runners (19-21) protrude from the top and bottom surfaces of the puck, allowing it to move easily on a hard non-ice surface. A critical feature of the puck is the open areas formed between the central member (14) and an inner ring surface (15) of the outer ring (26). These open areas allow for inward deformation of the outer ring, reducing the puck's tendency to bounce and making it less likely to cause injury when striking a player. Claim 1 of the patent recites this feature and reads as follows:
 
 
 3
 1. A puck for use on a non ice surface, said puck being generally cylindrical in shape and having an upper surface, a lower surface, and an outer peripheral surface and having a vertical central axis when its upper or lower surface is resting on a horizontal floor, said puck comprising:
 
 
 4
 an outer ring having an outer ring surface which comprises the outer surface of the puck, an inner ring surface, an upper surface and a lower surface which comprises the upper and lower surfaces of said puck;
 
 
 5
 at least three runners extending upwardly from said upper surface and at least three runners extending downwardly from the lower surface, whereby said puck rides on said runners whether it is resting on its upper surface or on its lower surface;
 
 
 6
 an open area formed inwardly from said inner ring surface of said outer ring said open area permitting the inwardly directed deflection of an entire portion of the outer ring; and
 
 
 7
 a central member supported centrally about said vertical central axis and held to said outer ring by attachment means affixed to said inner ring surface of said outer ring and said puck being fabricated from an elastic material so that the outer ring will deflect toward the vertical central axis when the outer surface of said outer ring is struck against a wall or other object whereby excess bounce is prevented while nonetheless using a firm material of construction.
 
 
 8
 Bellehumeur sued Bonnett, alleging that the sale of the Mach 1 and Nighthawk brand pucks infringed the '140 patent. Bonnett admitted infringement with respect to the original version of the puck. After the complaint was filed, Bonnett introduced a modified version of the puck, which included a webbing extending completely across the open areas of the puck.
 
 
 9
 The district court initially granted summary judgment, holding that Bonnett infringed the patent by the sale of the original version of the accused puck, and finding that the infringement was willful. After a bench trial, the district court concluded that the modified version of the puck did not infringe the patent. The court found no literal infringement, construing the claim to require distinct inner and outer rings and determining that, because of their webbing, the modified pucks did not have a distinct inner ring. The court also found no infringement under the doctrine of equivalents, finding that the structure of the modified puck performed a substantially different function and produced a substantially different result compared with the claimed puck. Specifically, the court found that the webbing intersected the openings and thus prohibited any significant deflection of the puck.
 
 
 10
 As compensation for the infringement caused by sale of the original version, the court awarded damages based upon Bonnett's profit from the sale of the infringing pucks. In particular, the court found that Bonnett sold 24,003 infringing pucks and that his profit was $.50 per puck. The court thus awarded $12,001.50 in lost profits damages. The court did not award increased damages, concluding that Bonnett's conduct did not warrant such damages. Bellehumeur now appeals to this court, arguing that the district court erred in its judgment concerning damages and in finding a lack of infringement by sale of the modified pucks. * * Bonnett did not file a brief or argue at the hearing.
 
 
 11
 On appeal from a bench trial, we review a district court's decision for errors of law and clearly erroneous findings of fact. Fed.R.Civ.P. 52(a); see Interspiro USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 930, 30 USPQ2d 1070, 1072 (Fed.Cir.1994).
 
 A. Infringement
 
 12
 Bellehumeur argues that the only difference between the original puck that was held to infringe the claims and the modified pucks was the addition of the webbing, and that even with the webbing, the modified pucks retained an open area. He contends that the phrase "open area" is defined physically by the space between the central member and the outer ring and defined functionally by its ability to permit inwardly-directed deflection. According to Bellehumeur, the modified pucks possessed both of these physical and functional characteristics; they had a space between their central members and outer rings, and that space permitted deflection despite the presence of the webbing.
 
 
 13
 Determining whether a patent claim has been infringed requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Claim construction is a question of law, which we review de novo. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc), aff'd, 116 S.Ct. 1384, 38 USPQ2d 1461 (1996). The application of a properly construed claim to the accused device is a question of fact, which we review for clear error on appeal from a bench trial.
 
 
 14
 The district court did not clearly err in finding that the modified version of the accused pucks did not literally infringe the claims. The claims require an open area permitting "deflection of an entire portion of the outer ring." The district court found that the webbing in the modified pucks prohibited any significant deflection of the outer ring; Bellehumeur has failed to show that this finding is clearly erroneous. Bellehumeur cites testimony of Edgar W. Averill, the patent attorney who prosecuted the patent, stating that the puck permits deflection. However, because there is conflicting testimony in the record concerning the extent to which the modified puck permits deflection of an entire portion of the outer ring, and the district court's finding of a lack of significant deflection was apparently based at least in part upon a credibility determination, we have no basis to find error in that determination. Moreover, simple inspection of the modified puck indicates that the space between the outer ring and the central member is substantially closed, not open. Therefore, because the modified pucks fail to meet the limitations of the claims, the district did not err in concluding that they do not literally infringe.
 
 
 15
 Bellehumeur argues that, even if the claims are not literally infringed, they are infringed under the doctrine of equivalents. In particular, he argues that the accused pucks perform the same function in the same way, permitting deflection by having an open area. He cites testimony of Averill, which he argues proves that the addition of the webbing does not change the function of the modified puck. In effect, he asserts that we should hold that the modified puck stops here. Unfortunately, we cannot agree.
 
 
 16
 A patent may be infringed under the doctrine of equivalents by manufacture, use, or sale of subject matter equivalent to that literally claimed. Infringement under the doctrine "requires proof of insubstantial differences between the claimed and accused products or processes." Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1521-22, 35 USPQ2d 1641, 1648 (Fed.Cir.1995), cert. granted, 116 S.Ct. 1014 (1996). Infringement under the doctrine is a question of fact, which we review for clear error on appeal from a bench trial.
 
 
 17
 The district court did not err in finding a lack of infringement under the doctrine of equivalents. As noted above, the court found that the webbing in the modified puck prohibits any significant deflection, and Bellehumeur has not shown that this finding is clearly erroneous. Also, Bellehumeur admitted, citing testimony of Averill, that the ability of the patented puck to be deflected inwardly was the reason for its patentability; he cannot now persuasively assert that the claims cover pucks which fail to be deflected. Moreover, as noted, the modified puck lacks the required open area. Thus, by failing to have an open area that permits deflection, the modified puck does not satisfy a limitation of the claim or contain an equivalent structure, as required for a finding of infringement under the doctrine of equivalents. See Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 937, 4 USPQ2d 1737, 1741 (Fed.Cir.1987) (in banc) ("A device that does not satisfy [a] limitation at least equivalently does not function in substantially the same way as the claimed invention."), cert. denied, 485 U.S. 961 (1988).
 
 B. Damages
 
 18
 Bellehumeur argues that the district court erred in its determination of lost profits damages; we agree. We review a district court's methodology in calculating damages for an abuse of discretion. Unisplay, S.A. v. American Elec. Sign Co., 69 F.3d 512, 517 n. 8, 36 USPQ2d 1540, 1544 n. 8 (Fed.Cir.1995). An error of law can constitute an abuse of discretion. See Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1569, 28 USPQ2d 1081, 1091 (Fed.Cir.1993), cert. denied, 114 S.Ct. 1540 (1994). If a patentee has proven entitlement to lost profits damages, he is entitled to his own lost profits. See Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545, 35 USPQ2d 1065, 1069 (Fed.Cir.) (in banc), cert. denied, 116 S.Ct. 184 (1995). The district court thus committed an error of law and hence abused its discretion in calculating damages on the basis of the profits of the infringer, Bonnett, rather than the lost profits of the patentee, Bellehumeur. It is undisputed that Bellehumeur's profit was $1.50 per puck, and that he has satisfied the other requirements for entitlement to lost profits. Therefore, we can recalculate, based upon the undisputed record, the lost profits damages to which Bellehumeur is entitled. We conclude that he is entitled to damages of $36,004.50, calculated by multiplying $1.50 profit per puck by the 24,003 infringing pucks. Accordingly, we modify the district court's award of damages to $36,004.50.
 
 
 19
 Bellehumeur also argues that the district court abused its discretion in denying an award of increased damages even though it found the infringement to be willful. We do not agree. A decision whether to award increased damages is left to the discretion of a district court. Goodwall Constr. Co. v. Beers Constr. Co., 991 F.2d 751, 758, 26 USPQ2d 1420, 1426 (Fed.Cir.1993). Although the court initially found the infringement to be willful, it found after trial that "nothing suggests that the defendant blatantly, blindly and willfully infringed the 410 puck to the extent that a deterrent need be imposed." Bellehumeur has not shown the court's holding in light of this finding to have been an abuse of discretion. Moreover, it did award attorney fees to Bellehumeur, as it was authorized to do in an exceptional case. 35 U.S.C. § 285 (1994). Accordingly, we affirm the district court's judgment denying an award of increased damages.