UNITED STATES of America,
Appellee,

v.

Ronald Thomas BOHLE, Appellant.

No. 645, Docket 72-1868.

United States Court of Appeals,
Second Circuit.

Argued Feb. 23, 1973.

Decided March 20, 1973.

Sarah W. Salter, Syracuse, N. Y. (Anthony E. Battelle, Syracuse, N. Y., on the brief), for appellant.

Robert E. Wildridge, Asst. U. S. Atty. (James M. Sullivan, Jr., U. S. Atty., N.D.N.Y., Gustave J. DiBianco, Asst. U. S. Atty., on the brief), for appellee.

Before FEINBERG, MULLIGAN, and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

In January 1969, Ronald Thomas Bohle, a young man of 22, hijacked an Eastern Airlines plane then enroute from Miami, Florida to Nassau, Bahamas and diverted it to Cuba. It is not clear from the record what transpired after that, but Bohle was eventually apprehended in November 1969 when entering the United States (in the Northern District of New York) from Canada. Despite a defense of insanity, Bohle was convicted after a jury trial in the United States District Court for the Northern District of Indiana, the state of his residence, for the crime of aircraft piracy, 49 U.S.C. § 1472(i). However, the conviction was reversed by the Court of Appeals for the Seventh Circuit because of various errors in the conduct of the trial, 445 F.2d 54 (1971), and the case was remanded for a new trial. The Government apparently then concluded that venue might be more appropriate in the Northern District of New York under 49 U.S.C. § 1473(a), see 445 F.2d at 58–60, and a second jury trial was held in that district before Lloyd F. MacMahon, J., sitting by designation. Bohle was again convicted, and received a mandatory minimum sentence of 20 years imprisonment.[1] On this second appeal, we find no error and affirm the judgment of conviction.

I

■ At trial, appellant stipulated to all elements of the offense except his criminal responsibility at the time of the crime. The defense again sought to establish that Bohle was legally insane under the definition of criminal responsibility we adopted in United States v. Freeman, 357 F.2d 606, 622 (2d Cir. 1966):

A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or

---

1. 49 U.S.C. § 1472(i)(1)(A) allows a jury to impose the death penalty. In United States v. Bohle, 346 F.Supp. 577 (N.D. N.Y.1972), Judge MacMahon held this part of the statute unconstitutional. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

On appeal, Bohle argues that the Government's proof of sanity was insufficient as a matter of law to sustain its burden of proving criminal responsibility beyond a reasonable doubt. We disagree.

To be sure, the defense presented substantial evidence of insanity. Lay testimony, from which experts later drew factual data, established that at the time of the crime Bohle was a disturbed individual by any measure, maladjusted in high school and in the military and unsuccessful in personal relationships. There was also testimony from defense experts—two psychiatrists (the conclusions of a third were stipulated into the record), one doctor of osteopathy with five years of psychiatric practice and a clinical psychologist. Bohle was diagnosed with varying degrees of certitude as suffering from "schizophrenia, paranoid type" and subject to anxiety and psychotic episode when under stress; his thought processes were characterized as largely divorced from reality, "delusional." Three of the doctors categorically stated that Bohle was not legally sane at the time of the crime.

■ Quoting Dusky v. United States, 295 F.2d 743, 754 (8th Cir. 1961) (Blackmun, J.), cert. denied, 368 U.S. 998, 82 S.Ct. 625, 7 L.Ed.2d 536 (1962), appellant argues that

the nature and quantum of the evidence which the government must produce to meet its burden so as to justify the submission of the insanity issue to the jury varies with the nature and quantum of the evidence indicating mental illness.

Accord, Brown v. United States, 351 F. 2d 473, 474 (5th Cir. 1965); Wright v.

United States, 102 U.S.App.D.C. 36, 250 F.2d 4, 7 (1957). Even so, the Government's evidence was adequate to withstand a motion for acquittal. There was testimony of passengers and airline personnel from which the jury could infer that Bohle's actions and reactions during the hijacking, as described by the witnesses, were not those of an individual detached from reality. We do not say that this would have been sufficient standing alone, but the prosecution also offered further testimony. Its clinical psychologist testified in substance that appellant's response to certain tests administered after the offense were within the range of normal. More significantly, a psychiatrist characterized appellant as having "a psychopathic personality, sociopathic features"—a personality disorder—but concluded that he had no mental disease or defect. Appellant attacks the psychiatrist's testimony on various grounds. However, the doctor's limited opportunity to observe appellant (the course of an afternoon), though not ideal, cf. United States v. Freeman, *supra*, 357 F.2d at 623 n. 53, was adequate; incidents culled by the doctor from appellant's history and used to substantiate his diagnosis were sufficient in number and probative value. The alleged shortcomings in this doctor's testimony as compared to that of the various defense witnesses were at most matters of weight and credibility for the jury, whose role is to resolve "battles of experts" testifying as to insanity. See, e. g., Washington v. United States, 129 U.S.App.D.C. 29, 390 F.2d 444, 445–446 (1967); cf. Blocker v. United States, 110 U.S.App.D.C. 41, 288 F.2d 853, 862–864 (1961) (Burger, J., concurring).[2]

■ From all of the evidence, reasonable men could infer either that Bohle

2. One of the defense psychiatrists was originally retained by the Government as its expert. Defense counsel brought this fact to the attention of the jury in his opening and in summation; the judge referred to it in his charge; and the jury was perfectly capable of drawing any appropriate inferences as to the consequent weight of his testimony. Thus, although appellant complains that the doctor's testimony as to how he came into the case was improperly stricken, the claim is without substantial merit.

was schizophrenic and delusionally fleeing from reality, as the defense contended, or that he was merely mentally unstable and rationally fleeing from responsibility, as the prosecution argued. Therefore, under the legal doctrines now in effect, that question was for the jury as part of the process of guilt determination. Whether that is the best of all possible procedures is an issue we do not intend to raise here, although as to this also reasonable men can and do differ.[3] We reject appellant's assertion that where facts equally support inferences of guilt beyond a reasonable doubt or innocence, the court must direct acquittal. See United States v. Taylor, 464 F.2d 240, 243–245 (2d Cir. 1972). While the issue of insanity was a close one, the jury could properly conclude that Bohle was sane beyond a reasonable doubt when he unlawfully seized the aircraft.[4]

## II

■■ Appellant has two further contentions. At the second trial, he elected not to testify in his own behalf. At his first trial, however, he had testified. Over objection, this former testimony was admitted in evidence at the second trial. Appellant recognizes the general rule that "a defendant's testimony at a former trial is admissible in evidence against him in later proceedings," Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968); but he contends that the general rule is inapplicable here on two grounds.[5] He first argues that any probative value of the former testimony was far outweighed by its prejudicial effect. But Bohle's recollection of his state of mind during the hijacking bore directly on the issue of sanity. Moreover, the evidence was not prejudicial in the technical sense of introducing evidence of other crimes or of extraneous inflammatory matters, although it may well have assisted the Government's case, see United States v. Overton, 470 F.2d 761, 767 (2d Cir. 1972). Nor are we persuaded by appellant's second argument against admissibility. On appeal from Bohle's first conviction, the testimony of a psychiatrist testifying for the prosecution was held inadmissible because "the results of a test on which the doctor had in part based his opinion had not been formulated by the doctor but by someone else who was not in court. . . ." United States v. Bohle, supra, 445 F.2d at 69.[6] Appellant relies on Harrison v. United States, supra, in which the Supreme Court upset a conviction where first-trial testimony of a defendant, given after the Government's introduction of confessions subsequently held unlawful on appeal, was introduced at a second trial following remand. Bohle asserts that his first-trial testimony should similarly have been excluded at his second trial. The argument is flawed. Harrison involved defendant testimony "impelled" by introduction of illegal confessions and thus inadmissible

---

3. See generally United States v. Chandler, 393 F.2d 920, 928 (4th Cir. 1968) (en banc); Wion v. United States, 325 F.2d 420, 428 & n. 10 (10th Cir. 1963) (en banc), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). See also Burger, Psychiatrists, Lawyers, and the Courts, Federal Probation 3, 9 (June 1964). But cf. A. Goldstein, The Insanity Defense 220–26 (1967).

4. Appellant's excellent brief cites some 18 cases in which convictions have been reversed for insufficient evidence of sanity. However, as the Court of Appeals for the Fifth Circuit observed when nine of those cases were cited to it, "each . . .

holds no more than that upon particular facts *in that case* . . . the government had failed to discharge its burden of proving . . . sanity. . . ." Mims v. United States, 375 F.2d 135, 147 (1967).

5. Appellant also asks us to reexamine the logic of the general rule. Because the Supreme Court in *Harrison* explicitly refused to question the rule, we decline the invitation.

6. The same psychiatrist testified for the Government in the second trial. On this appeal no similar objection is made to his testimony.

as "fruit of the poisonous tree." We see no reason to extend the "fruits" doctrine to testimony "impelled" by mere evidentiary hearsay error, as distinct from unconstitutional police practices. Moreover, the Government says that Bohle testified at the first trial *before* its psychiatrist took the stand; the assertion has not been contradicted by appellant in a reply brief or at oral argument. Even if *Harrison* applies, therefore, the Government has met its burden of showing "that its illegal action did not induce [defendant's] testimony." 392 U.S. at 225, 88 S.Ct. at 2011.

█ Finally, appellant argues that the trial judge erred on the last day of trial in disposing of a request for a voir dire to determine whether any juror had, during the overnight recess, heard or read anything prejudicial—apparently an unrelated skyjacking had been widely reported in the media. The request was made by the Government and apparently joined in by the defense. The trial judge was concerned, among other things, that a juror's overly detailed response might needlessly insert prejudice where none had genuinely existed before.[7] In the colloquy at the bench, defense counsel requested the court "to ask a simple question if they have read anything on this, period, without referring to anything?" The judge then put the general question set forth in the margin.[8] When there was no affirmative response from the jurors, the judge allowed the trial to proceed, and defense counsel offered no objection. On this record, the judge acted within his discretion; we perceive no error, much less plain error. See United States v. Ragland, 375 F.2d 471, 475–476 (2d Cir. 1967), cert. denied, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed. 2d 987 (1968).

Judgment affirmed.

7. The judge had reminded the jurors the day before:
    Don't read anything about [the case].
    Don't watch anything on television about it.

8. THE COURT: Have any of you read anything on the subject of hijacking, or

seen anything on television or heard anything on the radio about this case which would in any way change any of the answers that you gave me at the time you were selected to sit as jurors in this case, which would in any way influence your opinion one way or the other in this case?