JUSTICE LEAPHART,
dissenting.
*51 ¶34 I concur with the Court’s conclusion that § 46-16-701, MCA, does not preclude the State from using Ingraham’s testimony from the first trial during its case-in-chief at the retrial of this case.
¶35 I dissent from the Court’s conclusion that use of his first trial testimony in his second trial would not violate his constitutional right to be free from being compelled to testify against himself.
¶36 In making his constitutional argument, Ingraham invokes the United States Supreme Court decision in United States v. Harrison (1968), 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047. In Harrison, the United States Supreme Court posed the following: “The question is not whether the petitioner made a knowing decision to testify, but why.”Harrison, 392 U.S. at 223, 88 S.Ct. at 2010, 20 L.Ed.2d at 1052. The Court held that since Harrison’s testimony in the first trial was compelled by the introduction of illegally obtained confessions, that testimony was inadmissible in a later trial. Harrison, 392 U.S. at 226, 88 S.Ct. at 2012, 20 L.Ed.2d at 1053.
¶37 The State of Montana argues, and this Court now agrees, that the Harrison rule is applicable only to situations where the defendant testifies in response to evidence which was both illegally obtained and improperly introduced. Although Harrison involved a fact situation where illegally obtained confessions were improperly admitted into evidence, thus compelling Harrison to take the stand, I fail to see why the rationale of the Harrison ruling should be restricted to that limited scenario.
¶38 As the United States Supreme Court noted, the pivotal question is “why” did the defendant take the stand. If he was compelled to respond to improperly admitted evidence then his decision was not “voluntary” and he was denied a fair trial. Although the improper admission of illegally obtained evidence perhaps represents the strongest basis for the Harrison ruling, it is not, by any means, the only basis. A defendant who is confronted with improperly admitted evidence may be compelled to take the stand to rebut that evidence irrespective of whether the evidence was illegally obtained. For example, in violation of Rule 609, M.R.Evid., the State may have introduced evidence that the defendant had been convicted of a crime; it may have offered evidence of prior wrongs or acts to show that the defendant acted in conformity therewith, in violation of Rule 404, M.R.Evid.; it may have improperly introduced hearsay evidence in violation of Rule 802, M.R.Evid., or, as here, the State may have introduced irrelevant and highly prejudicial evidence in violation of Rule 402, M.R.Evid. None *52 of the above examples involve illegally obtained evidence. Nevertheless, a defendant who would not otherwise have chosen to testify, when confronted with such improper evidence, may be compelled to take the stand and respond. Under such circumstances, it cannot be said that his or her choice to testify was voluntarily made. Having been compelled to take the stand by the introduction of improperly admitted evidence, the defendant is denied a fair trial.
¶39 The Court cites a number of cases from federal and state courts which have held that the Harrison rationale only applies where the evidence has been both illegally obtained and improperly admitted. However in each of these decisions, the Court does nothing more than recite the fact that the Harrison decision involved illegally obtained confessions and that no other court has extended the Harrison rationale to “mere evidentiary errors.” United States v. Bohle (2nd Cir. 1973), 475 F.2d 872, 875-76 (“[w]e see no reason to extend the ‘fruits’ doctrine to testimony ‘impelled’ by mere evidentiary hearsay error, as distinct from unconstitutional police practices”). The Bohle court determined that the defendant had testified before the questionable evidence had been introduced. Thus, even if Harrison were to apply, the government met its burden of showing that its evidence did not induce the defendant’s testimony. Patton v. U.S. (D.C. App. 1997), 688 A.2d 408, 411 (“[w]e know of no case in which a court has excluded, under the doctrine of Harrison TV, testimony said to have been induced by an incorrect evidentiary ruling”); State v. Hunt (N.C. 1994), 457 S.E.2d 276, 285 (even if testimony at first trial were induced by inadmissible evidence rather than unconstitutionally obtained evidence, the Harrison exception would not apply); Towe v. State (Ark. 1990), 801 S.W.2d 42, 43 (concluding that Harrison is inapplicable to routine evidentiary rulings); State ex rel. LaSota v. Corcoran (Ariz. 1978), 583 P.2d 229, 237-38 (given the Supreme Court’s reliance on “fruit of the poisonous tree doctrine,” the Harrison rationale cannot be applied to evidence which was not illegally obtained). None of the decisions cited by the Court engaged in any independent analysis as to why the Supreme Court’s concern with compelled testimony would not apply where a defendant is compelled to respond to improperly admitted evidence, regardless of whether that evidence was illegally obtained.
¶40 The above decisions all assume that the Harrison rationale is nothing more than an extension of the “fruit of the poisonous tree” doctrine. Although that doctrine is certainly part of the Supreme *53 Court’s reasoning, it is not the sole basis for its decision. There is an equally grave concern with the government using inadmissible evidence to force a defendant into taking the witness stand, thereby forfeiting his/her constitutional right to remain silent.
¶41 The ultimate inquiry is not whether there was impermissible police activity, but whether the confession was voluntary. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906. Although impermissible police conduct certainly undermines a person’s volition, it is not the sine qua non of coercion. A defendant who is confronted at trial with the introduction of evidence of prior convictions, prior bad acts, irrelevant and prejudicial evidence or hearsay testimony may be under as much if not more compulsion to forego his constitutional right to remain silent and to testify when he would not otherwise have done so. When he or she testifies under such coercive circumstances, the resulting testimony cannot be deemed to have been voluntarily given.
¶42 In Schneckloth v. Bustamonte (1973), 412 U.S. 218, 225-26, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854, 861, the United States Supreme Court recognized that:
“[V]oluntariness” has reflected an accommodation of the complex of values implicated in police questioning of a suspect. At one end of the spectrum is the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws.... At the other end of the spectrum is the set of values reflecting society’s deeply felt belief that the criminal law cannot be used as an instrument of unfairness .... [Citations omitted.]
¶43 I would liken Ingraham’s first trial testimony to a confession which was obtained under undue influence. If, despite the improper introduction of irrelevant and highly prejudicial evidence in his first trial, Ingraham’s coerced testimony can be used against him in a second trial, it must be said that the criminal law (the rules of evidence) have been used as an instrument of unfairness.
¶44 The distinction between a case where the evidence was both illegally obtained and improperly admitted and a case in which evidence is only improperly admitted is a distinction without a difference. Both may result in compelled testimony. I would hold that improperly admitted evidence alone is sufficient to trigger the Harrison rationale and require the court to determine whether the evidentiary error was so prejudicial that it can be deemed to have been the impetus behind the defendant’s decision to testify. If the record shows that *54 the defendant would not have taken the stand but for the improper evidence, then his testimony should not be admissible in a subsequent trial.
¶45 I would affirm the decision of the District Court and hold that the use of Ingraham’s testimony in the second trial would violate his right to remain silent as guaranteed by the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution.
JUSTICE NELSON and the DISTRICT COURT JUDGE WATTERS join in the foregoing dissenting opinion.