**LORAL FAIRCHILD CORPORATION, Plaintiff,**

v.

**VICTOR COMPANY OF JAPAN, LTD., et al., Defendants,**

Loral Fairchild Corporation, Plaintiff,

v.

**Matsushita Electric Industrial Company, Ltd., et al., Defendants.**

Nos. Civ.A.92–0128–RRR, Civ.A.91–5056–RRR.

United States District Court, E.D. New York.

June 7, 2002.

Gregory Lyons, Wiley, James H. Wallace, Jr., Rein & Fielding, Washington, DC, Peter K. Stackhouse, Walsh, Colucci, Stackhouse, Emrich & Lubeley, P.C., Arlington, VA, Anthony W. Karambelas, Newport Beach, CA, for Loral Fairchild Corp.

Michael J. Berger, Amster, Rothstein & Ebenstein, New York City, for Victor Co. of Japan, US JVC Corp.

Cynthia B. Okrent, Cullen & Dykman, Brooklyn, NY, Barry W. Graham, Steven McCann, John Lowe, Douglas B. Henderson, Jeffrey A. Berkowitz, Vincent P. Kovalick, Robert E. Converse, Jr., Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, for Nikon Corp., Nikon, Inc.

Richard J. Spensley Horn Jubas & Lubitz, Ted R. Rittmaster, Spensley Horn Jubas & Lubitz, Los Angeles, CA, for Murata Machinery, Ltd., Murata Business Systems, Inc.

### ORDER

RANDELL R. RADER, Circuit Judge, sitting by designation.

This case returned to this court on remand from the Court of Appeals for the Federal Circuit. *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 60 USPQ2d 1361 (Fed.Cir.2001), *reh'g denied*, 266 F.3d 1358 (Fed.Cir.2001) (*Toshiba II*). Over the course of two weeks in December 2001, Loral Fairchild Corporation (Loral), Toshiba, and NEC tried the issues of infringement and validity of U.S. Patent No. 3,931,674 (the '674 patent) to a jury. On December 20, 2001, the jury returned a verdict finding the '674 patent invalid and not infringed by Toshiba's Type 4 process. After the verdict, Loral moved for judgment as a matter of law or, alternatively, for a new trial. Because substantial evidence supports the jury's verdict, this court denies Loral's motion for judgment as a matter of law. Further, because the jury verdict is not against the weight of the evidence, this court also denies Loral's motion for a new trial.

### BACKGROUND

This patent infringement suit has a lengthy procedural history. In 1991, Loral sued numerous Japanese electronics manufacturers, and their U.S. distributors, for infringement of U.S. Patent Nos. 3,931,674 (the '674 patent) and 3,896,485 (the '485 patent). In August 1995, the court severed and stayed all of the non-manufacturing consumer defendants, leaving six core groups of

manufacturing defendants—Sony, Sanyo, Toshiba, Hitachi, NEC, and OKI. On October 11, 1995, the parties agreed to a plan for separate trials for each of the six groups of manufacturing defendants. At this time, only Toshiba and NEC remain as defendants, and only the '674 patent is at issue.

The '674 patent was filed on Feb. 8, 1974, issued on Jan 13, 1976, and is owned by Loral. The patent claims a process for manufacturing a charge-coupled device (CCD). A CCD is an important component in electronic cameras that converts light into electrical charges. Thus, when focused on an image, the CCD converts that image into an electrical signal. The signal can then be stored and later displayed on a video monitor. Claim 1, the only claim at issue, recites: [1]

1. A process for fabricating a charge coupled device structure in a semiconductor substrate, comprising the steps of:

[1] selectively applying at least one layer of insulation material to said semiconductor substrate;

[2] selectively forming a plurality of spaced-apart first gate electrodes on the uppermost surface of said at least one layer of insulation material;

[3] forming a first insulation layer over said plurality of first gate electrodes;

[4] forming implanted barrier regions in said semiconductor substrate in the intervals between said plurality of spaced-apart first gate electrodes, the edges of said implanted barrier regions being aligned with the vertical edges of the insulation layer on the respective first gate electrodes;

---

**1.** For referencing simplicity, this court has numbered the claim limitations 1–6.

Throughout this opinion these limitations are at times referred to interchangeably as steps.

[5] selectively forming a plurality of second gate electrodes on said uppermost surface of said at least one insulating layer between said plurality of spaced-apart first gate electrodes, each of said second gate electrodes substantially occupying the space between adjacent first gate electrode [sic]; and

[6] connecting each of said second gate electrodes to an individual adjacent first gate electrode to form a composite electrode for a charge coupled element.

Figure 9 from the '674 patent illustrates a CCD constructed with the claimed process:

Fig_9

Sony was the first of the defendants to go to trial. Before the Sony trial in 1996, this court held a two-day *Markman* hearing to acquire information before setting the meaning of the patent claims. After the hearing, this court issued an order on the meaning of the claims. *Loral Fairchild Corp. v. Victor Co. of Japan,* 906 F.Supp. 798 (E.D.N.Y.1995) (*Loral I* ).

Over the course of five weeks in 1996, Loral and Sony tried the issues of ownership, validity, and infringement. On February 14, 1996, the jury returned a verdict that Loral owned the patent, that Sony did not show invalidity by clear and convincing evidence, and that Loral had shown infringement under the doctrine of equivalents.

Sony then moved for judgment as a matter of law (JMOL) or, alternatively, for a new trial. Sony's motion asked this court to reconsider the evidence on validity. This court determined that no reasonable jury could have found that the Erb reference did not qualify as prior art against the '674 patent. *Loral Fairchild Corp. v. Victor Co. of Japan,* 931 F.Supp. 1014, 1031 (E.D.N.Y.1996) (*Loral II* ). Because Dr. Erb's printed publication[2] was prior art, this court reconsidered the validity verdict. Thus, this court granted Sony's motion for JMOL on three grounds: (1) the Erb article is § 102(a) prior art that rendered the '674 patent invalid for obviousness; (2) the work of Drs. Erb and Su, which culminated in the article, is § 102(g) prior art, which also rendered the '674 patent invalid; and (3) prosecution history estoppel precludes infringement under the doctrine of equivalents by any process that merely reversed steps three and four of claim 1 of the '674 patent. *Id.*

2. The Erb article is a journal article authored by Dr. Darrel Erb, D.M. Erb, W. Kotyczka, S.C. Su, C. Wang & G. Clough, *An Overlapping Electrode Buried Channel CCD,* Technical Digest of the Institute of Electrical and Electronic Engineers International Electron Devices Meeting, Dec. 2, 1973, 24–46 (the Erb article).

On appeal, the Court of Appeals for the Federal Circuit affirmed the grant of JMOL on only one ground. Although this court still had multiple defendants awaiting trial on the same patent, the Federal Circuit did not address the validity of the '674 patent. Thus, the Federal Circuit upheld only this court's determination on JMOL that prosecution history estoppel barred Loral's allegations of infringement under the doctrine of equivalents. Because it did not reach validity, the Federal Circuit's decision did not address whether the Erb reference is prior art for the '674 patent. *See Loral Fairchild Corp. v. Sony Corp.,* 181 F.3d 1313, 1316 n. 3, 50 USPQ2d 1865, 1876 n. 3 (Fed.Cir.1999) (*Loral III* ).

Without a word from the Federal Circuit on validity, Loral renewed its action for literal infringement of the '674 patent against Toshiba and NEC. On April 10, 2000, Toshiba and NEC each moved for summary judgment of invalidity of the '674 patent based on the evidence Loral had produced in the Sony trial. Although the parties had agreed to abide by the results of the Sony trial, the Federal Circuit had not addressed the validity of the '674 patent. This court held a two-day hearing on the motions. The court granted the motions, reaffirming its conclusion from the Sony trial that both the Erb article and the Erb/Su work qualify as "prior art to the '674 patent under 35 U.S.C. § 102(a) and (g)," and that claim 1 was therefore obvious. *Loral Fairchild Corp. v. Victor Co. of Japan,* Nos. 92–0128 & 91–5056 (E.D.N.Y. June 21, 2000) (*Toshiba I* ). In reaching the conclusion of obviousness, this court relied on Loral's earlier concession of the interchangeability of steps three and four of the '674 process. *See Loral III,* 181 F.3d at 1327.

Loral appealed to the Federal Circuit. Based in part on Loral's proffer of evidence not available at the Sony trial, the Federal Circuit detected a genuine issue of material fact about whether Dr. Erb's work antedated the '674 invention dates. The Federal Circuit also questioned whether Dr. Erb had reduced his work to practice before publication of the Erb article. Therefore, the Federal Circuit reversed the summary judgment and remanded. *Toshiba II,* 266 F.3d at 1365.

In compliance with the remand, this court scheduled summary judgment motions and set a trial date. On December 4, 2001, this court ruled on the parties' motions for summary judgment on infringement, invalidity, inequitable conduct, and collateral estoppel. In that summary judgment order, this court also clarified the claim construction for the '674 patent used during the Sony trial. Specifically, at the request of the parties, the order elaborated that the requirement (step 6) that each second gate electrode connect to one, but not both, adjacent first gate electrodes is an open limitation made with reference to the gate electrodes as shown in Figs. 9, 11, and 13 of the '674 patent. Step 6 does not preclude connecting the second gate electrode to additional electrodes, so long as it satisfies the claim requirement of connection to one, but not both, adjacent first gate electrodes. This court also clarified that limitation 6 is a step in the process of fabricating CCD wafers. *Summary Judgment Order,* slip op. at 7.

This court then conducted a jury trial beginning December 10, 2001. The jury received the case for deliberation on December 18, 2001. While the jury deliberated on December 19, 2001, this court adopted a procedure necessitated by the scarcity of courtroom time in Brooklyn during reconstruction of the courthouse. Specifically, this court at that time entertained the parties' motions for judgment as a matter of law. This court heard arguments on the motions for over five hours.

On December 20, 2001, the jury returned its verdict: (1) Loral had not proven that Toshiba's Type 4 process infringed claim 1 of the '674 patent; (2) the Erb article was prior art; (3) the Erb/Su work that led up to the Erb article was prior art; and (4) Toshiba and NEC had proven that claim 1 of the '674 patent was invalid for obviousness. Loral then requested an extension of time to file Rule 50 motions. This court granted Loral an extension of fourteen days.

On January 15, 2002, this court issued a judgment on the jury's verdict and an order on the champerty and inequitable conduct issues. On February 7, 2002, Loral filed a written motion for JMOL under Fed.R.Civ.P. 50(b), or in the alternative for a new trial under Fed.R.Civ.P. 59 (JMOL/new trial motion), challenging the jury's verdict.

On February 21, 2001, and February 22, 2001, NEC and Toshiba filed oppositions to Loral's motion, alleging that Loral's motion was untimely and jurisdictionally barred. In its reply memorandum filed March 4, 2002, Loral asserted that its JMOL/new trial motion was not jurisdictionally barred.

Finally on March 13, 2002, Loral filed a protective motion with this court conditionally requesting an extension of time to file a notice of appeal of up to and until ten days after this court enters its order on this motion. Toshiba and NEC each filed an opposition to Loral's motion on March 20, 2002. Loral submitted its reply to the oppositions on March 26, 2002.

In a separate order and opinion dated April 1, 2002, this court held that Loral's Rule 50(b)/59 motion was timely and thus stayed the time for Loral's appeal under Fed.R.App.P. 4 until such time as this court enters an order ruling on the motions. Further, this court granted in the alternative Loral's protective motion for extension of time to file a notice of appeal

under Fed.R.App.P. 4(a)(5). This opinion will address Loral's Rule 50(b)/59 motion for judgment as a matter of law, or alternatively for a new trial.

## DISCUSSION

A Rule 50 motion tests the sufficiency of evidence in support of a jury verdict. *See Milbank, Tweed, Hadley & McCloy v. Boon,* 13 F.3d 537, 542 (2d Cir.1994). Under Rule 50, this court must review the record to ascertain whether a reasonable jury could have reached the verdict in the case. *Milbank, 13 F.3d at 542.* Where substantial evidence supports the jury findings, this court must uphold the verdict. *Goodwall Constr. Co. v. Beers Constr. Co.,* 991 F.2d 751, 754, 26 USPQ2d 1420, 1423 (Fed.Cir.1993). Moreover, this court must draw reasonable inferences in favor of Toshiba and NEC, without determining credibility of witnesses, and without substituting its choice for that of the jury. *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 863, 26 USPQ2d 1767, 1772 (Fed.Cir.1993). In sum, this court must deny a renewed JMOL motion unless Loral shows that no reasonable jury could have reached its result. *Goodwall,* 991 F.2d at 754. In determining that no reasonable jury could have reached its result, the evidence must be "so overwhelming that reasonable and fair minded persons could only have reached the opposite result." *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir.1992) (quoting *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988)).

With this standard in mind, this court discerns substantial evidence in support of the jury's verdict. Based on this record, a reasonable jury could have concluded that Loral did not prove infringement by Toshiba's Type 4 process and that Toshiba and NEC had proven invalidity of claim 1 of the '674 patent.

*Infringement of Claim 1 of the '674*
*Patent by Toshiba's Type 4*
*Process*

■ The issue of infringement depends on whether Toshiba's Type 4 (etch-and-regrow) process includes limitation 5 of claim 1. To show infringement, Loral bears the burden of proving by a preponderance of evidence that Toshiba's process included the process steps of limitation 5 as interpreted by this court. Trial Record (TR) 1802–03. In its instructions to the jury, this court explained the meaning of limitation 5:

> Step 5 requires the second gate electrodes to be formed on the same material at roughly the same thickness as the material under the first gate electrodes. This requirement does not necessarily describe the formation of the second gate electrodes on the exact atomic surface of the insulation material on which the first gate electrodes were formed. This positioning description is not limited to an exact atomic layer formed earlier in the multi-stepped process. Consequently, the court concludes "said uppermost surface of said at least one insulating layer" requires formation of the second gate electrodes between the first gate electrodes on the upper surface of the same continuous insulation layer upon which the first gate electrodes were formed.

TR 1801.

Substantial evidence supports the jury's finding that in the Toshiba etch-and-regrow process, the second gate electrodes are not formed on the same continuous layer of insulation material as the first gate electrodes. In other words, the jury could reasonably have concluded that the Toshiba process does not place the second gate electrodes on the upper surface of the same continuous layer as the first gates. As Dr. Goto of Toshiba testified, the Toshiba process strips away the insulation layer

on which the first gates were formed and later regrows the insulation before forming the second gates. Dr. Goto showed a boundary between the regrown insulation material—on which the second gates rest—and the original insulation material. TR 897. Moreover, after the etch-and-regrow process, the surface of the insulation material under the electrodes is uneven. TR 868. *See also* Loral Ex. 532 (Loral SEM photograph showing the indentation). The etch-and-regrow process also leaves the insulation material under the second gate electrodes indented downward. *Id.* Thus, the jury could reasonably have relied on Dr. Goto's testimony to find that the Toshiba process does not form the second gates on a continuous layer of insulation material.

Furthermore, a reasonable jury could have found that the Toshiba process does not form the second gate electrodes on the same insulation layer as the first gate electrodes. The layer of insulation material on which the first gate electrodes were formed was the oxide layer that had been grown before the first gate electrodes were formed. Portions of that layer are then removed and new oxide is then grown. Thus, the new layer of insulation is different material from the original layer, albeit composed of the same chemical compound. In sum, the record supports the jury's determination that Loral did not prove by a preponderance of evidence that Toshiba's process included the process steps that satisfy the meaning of limitation 5 as interpreted by this court.

1. *Erb Article as Prior Art—Section 102(a)*

■ In *Toshiba II,* the Federal Circuit held that Loral raised a genuine issue as to whether Dr. Amelio's reduction to practice of the '674 invention preceded the publication of the Erb article on December

3, 1973. *See* 266 F.3d at 1365. Hence, it reversed the grant of summary judgment and remanded to this court for further proceedings. *Id.* Specifically, the Federal Circuit noted Dr. Amelio's declaration, which was not part of the earlier Sony trial. The Federal Circuit also recognized the possibility that evidence from the earlier Sony trial—namely Dr. Wen's testimony, the delivery date of the masks, and the Air Force Proposal—might corroborate Dr. Amelio's claims to invention before the Erb article. The Federal Circuit detected, therefore, a genuine issue of fact about when Dr. Amelio reduced his invention to practice. *Id.* at 1364–65.

At the December 2001 jury trial, Dr. Amelio, Dr. Wen, and Ms. Manoliu each testified to Dr. Amelio's reduction to practice of his invention before the publication of the Erb article. In addition, Loral relied on several documents as corroborating evidence: the Air Force Proposal and the accompanying cover letter dated November 1973, the September 1973 mask overlay set, the July 1973 memorandum from Dr. Pao to Dr. Amelio, the entry in Dr. Erb's notebook regarding a Fairchild presentation at the NELC conference in San Diego in September 1973, and the entry in Dr. Erb's notebook referring to "off shelf imagers." Loral did not, however, offer any run sheets, test results, lab notebook entries, or invention disclosure statements evincing a reduction to practice of Dr. Amelio's invention before December 3, 1973.

For its part, Toshiba contested Dr. Amelio's proffered invention dates and presented Dr. Erb, Dr. Walden, Dr. Bower, Dr. Goto, and Mr. Manbeck's testimonies to rebut Loral's case. Toshiba also offered several documents to show that Dr. Amelio did not reduce his invention to practice before December 1973: the Richbourg memorandum, Dr. Kim's 1974 IDEM paper, and an October 1973 lab notebook entry by Dr. Kim.

"The jury was free to assess the credibility of the witnesses." *Kirschner v. Office of Comptroller of City of New York*, 973 F.2d 88, 95 (2d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, this court must defer to the jury's role as the final arbiter of disputed facts. *In re Joint Eastern & Southern Dist. Asbestos Litigation*, 52 F.3d 1124, 1135 (2d Cir.1995); *United States v. Bohle*, 475 F.2d 872, 874 (2d Cir.1973). In this case, the twelve-member jury observed the witnesses over a seven-day period. In reaching its conclusion that the Erb article was prior art, the jury credited the testimony of Drs. Erb, Walden, Bower, and Goto over the testimony of Drs. Amelio and Wen, and Ms. Manuoliu. For example, the jury could reasonably have found that Dr. Amelio's testimony contained ambiguities regarding his conception and reduction to practice. *See* TR 419, 424–28, and 467–69. The jury also could reasonably have found that Dr. Wen gave conflicting testimony about the mask overlay set. *See* TR 480–81, 485, 490–91, 706. Thus, the jury could reasonably have decided that Dr. Wen did not sufficiently corroborate Dr. Amelio's alleged reduction to practice.

The jury in this case also could reasonably have found that Loral's documentary evidence did not provide a conclusive date of reduction to practice for Dr. Amelio's invention. For example, the November 1973 Air Force Proposal referred only to a "new isoplanar process," and lacked any process steps or specific details that would identify that proposal as the '674 invention. Although Dr. Wen thought the "new isoplanar process" meant the Amelio process, Dr. Amelio himself noted that Fairchild had invented the isoplanar process earlier

and used it to manufacture a variety of CCDs and semiconductors, TR 468–69, 475–76, including chips, like the 201, not made by the Amelio process. TR 589, 634. This court's assessment of the Air Force proposal in the Sony trial applies here again: "The Air Force proposal contains only conclusory statements about yield and performance of a process to make LARAM devices. No process steps, no data, no test parameters, no test results, and no dates appear in the proposal." *Loral II*, 931 F.Supp. at 1029. Hence, the jury could reasonably have found that the proposal's statements about a process to make LARAM devices too vague and generalized to corroborate Dr. Amelio's testimony.

Likewise, the September 1973 mask overlay set did not show that Dr. Amelio had actually made a CCD device using the patented process. Thus, the jury could reasonably have found that the mask set at best demonstrated Loral had performed some design work on a CCD. More important, even if used to make a CCD device, the mask set could have been used to perform processes not covered by the '674 patent, For example, the mask set could have been used to implant barriers before oxidizing the first gates—a 4–before–3 process different from the claimed Amelio process. Without more specifics, such as a process run sheet associated with the mask set, the jury was free to conclude that the mask set did not corroborate Dr. Amelio's testimony about invention dates. Nothing in this record specifically identifies the process associated with the mask set.

Loral invoked Dr. Pao's memorandum to Dr. Amelio on July 13, 1973, as corroborating evidence. This memorandum, however, purports to discuss the alleged reduction to practice before it even occurred. The record set the alleged reduction to practice in August of 1973. Loral Ex. 18, TR 362. Thus, Dr. Pao's memorandum is

at best just a recommendation for some future action, which the jury was free to conclude may never have occurred.

Loral also relied on Dr. Erb's notebook entry during the NELC conference in September 1973 to support Dr. Amelio's testimony that Dr. Kim disclosed the '674 invention at that conference. Dr. Erb testified, however, that he made those notes during the presentation of a Fairchild imager paper authored by Drs. Walsh and Dyck, not by Dr. Kim. TR 1143–44, Toshiba Ex. 21–22. Thus, the jury could reasonably have found that Dr. Erb's sketchy notebook entry recorded a process different from the '674 invention. Moreover, even if Dr. Kim discussed the '674 process at the NELC conference, a mere disclosure is not evidence that an invention has been reduced to practice. Once again, this court's observation in the Sony proceedings applies again: "[N]othing in the record about [Dr. Kim's] speech suggests Dr. Amelio had run the process and had tested CCDs produced from that process. In sum, Dr. Kim's speech does not prove that Dr. Amelio knew the process would work for its intended purpose." *Loral II*, 931 F.Supp. at 1028. The jury could thus reasonably have rejected this evidence as corroboration for Dr. Amelio's alleged reduction to practice.

The entry in Dr. Erb's notebook about "off shelf imagers" has similar flaws as corroborating evidence. Loral Ex. 703 at 77; Loral Ex. 1117. Loral contends that this entry, which shows the name of Fairchild's marketing chief Frank Bower and a telephone number, records a telephone conversation between Dr. Erb and Frank Bower. The entry is very sketchy and does not show anything about a specific Amelio process for producing imagers. Moreover, Dr. Erb testified that he could not even recall if the alleged telephone conversation even took place. TR 1248–

50. In any event, the few lines do not show that Dr. Amelio had performed a specific process with intended results.

In sum, the jury could reasonably have rejected all of Loral's proffered documentary evidence of a reduction to practice before publication of the Erb article. Without corroboration, Dr. Amelio's testimony cannot suffice to remove Dr. Erb's article from the prior art that the jury used to weigh the validity of the '674 invention.

Loral's evidence is not the total equation on this issue. Toshiba produced significant evidence to suggest that Dr. Amelio reduced his invention to practice after publication of the Erb article. In the first place, Toshiba produced a memorandum written by Mr. Richbourg, the Loral patent attorney who prosecuted the '674 patent. The memorandum states that Dr. Amelio disclosed to Mr. Richbourg his reduction to practice on January 4, 1974—more than a month after publication of the Erb article. The jury could reasonably have inferred that, given the priority Dr. Amelio placed on this new process (he compared it to the birth of a child, TR 404), he would have told Fairchild's patent department of its completion immediately rather than waiting several months. This Richbourg memorandum thus provides support for the jury's finding that Dr. Amelio did not reduce the invention to practice before the Erb article.

Another document also supports the jury's finding that Dr. Amelio did not reduce to practice before publication of the Erb Article. Dr. Kim, who was in charge of the 256–element chip that Loral purports to have used to first practice the '674 process, published a paper at the 1974 IEDM conference. Toshiba Ex. 115. Dr. Kim's paper describes a two-phase self-aligned buried channel linear CCD with 256 elements, the same kind of CCD used to reduce the '674 invention to practice.

In its first paragraph, the Kim paper references the Erb article when describing the self-aligned, ion-implanted barrier feature of the Fairchild CCD. In other words, contemporaneous with the invention of the '674 patent, a member of the Fairchild team attributed self-aligned ion-implanted barriers to Dr. Erb, not Dr. Amelio. Hence, the jury could reasonably have found that Dr. Kim's 1974 IDEM paper cast genuine doubt on Dr. Amelio's claim to have reduced the '674 invention to practice before the publication of the Erb article. Moreover, the Kim article adds weight to Dr. Erb's claim of prior invention. Apparently even Fairchild's leading researchers credited him.

The trial also featured extensive evidence about Fairchild's prosecution of its structure application—a divisional from the same parent application that produced the '674 patent. In the face of the Erb article and other prior art, Fairchild abandoned the structure application. The jury could have inferred that Fairchild would have antedated the Erb reference during prosecution of the structure application, if it could have done so. In sum, Toshiba produced significant and credible evidence upon which the jury could have relied for its conclusion that the Erb article was prior art.

Finally, absent a showing of actual reduction to practice, the Erb article retains priority unless Dr. Amelio can produce corroboration for his claim that he conceived his invention before the Erb article and exercised reasonable diligence to reduce the invention to practice beginning immediately before the Erb article was published and continuing up to the filing of the '674 application on February 8, 1974. *See Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1578, 38 USPQ2d 1288, 1291 (Fed. Cir.1996). The jury could have concluded that Loral did not supply adequate proof

to show either that Dr. Amelio supplied corroboration or exercised diligence.

At the outset, on the issue of diligence, Loral offered little evidence beyond some testimony about activities leading up to September 14, 1973, when the inconclusive mask set was produced. TR 362–64. This bit of evidence, however, contained only vague uncorroborated generalizations. *See Gould v. Schawlow*, 53 C.C.P.A. 1403, 363 F.2d 908, 919, 150 USPQ 634, 644 (Cust. & Pat.App.1966). The record clearly allowed the jury to discern that Dr. Amelio did not exercise the requisite diligence.

On the issue of corroboration, Loral offers no documents that directly corroborate a reduction to practice before December 3. Loral offered no run sheets, no test results, no oscilloscope traces (as in the Erb article), no lab notebook entries, no implant dose calculations, and no memoranda recording a reduction to practice before December 3, 1973. This court's conclusion after the Sony trial rings true after this trial as well: "Loral's evidence lacks specifics about test results or about time frame or about the types of processes producing the CCDs. When measuring reduction to practice in a priority contest, this specific evidence is critical." *Loral II,* 931 F.Supp. at 1029.

Loral had specific guidelines requiring its scientists to carefully document inventive activities in their notebooks. Despite these instructions, Dr. Amelio made no entries in his notebook evincing a reduction to practice before December 3, 1973. Moreover no other Loral employee could find lab notebook evidence of a reduction to practice before December 3.

For many reasons, substantial evidence supports the jury's finding that the Erb article is prior art under § 102(a). The jury could reasonably have relied on this trial record to find that Dr. Amelio did not reduce the '674 invention to practice before December 3, 1973.

2. *Erb/Su work that led up to the Erb article as Prior Art—Section 102(g)*

■ Because the jury found and the record supports its finding that the Erb article is prior art under § 102(a), this section on § 102(g) prior art is not necessary to support the jury's verdict of invalidity. With the Erb article available for the patentability inquiry under § 102(a), the jury's finding that the Erb article is also prior art under § 102(g) is simply an alternative course to qualify Dr. Erb's work as prior art. Nonetheless this court will address as well the parties' JMOL contentions on this jury finding.

In *Toshiba II,* the Federal Circuit did not address the issue of whether Loral raised a genuine issue as to whether the research activities of Dr. Erb, which culminated in the Erb article, qualifies as prior art under § 102(g). 266 F.3d at 1365, n. 1. In . *Loral II,* this court held that the Erb/Su work was prior art under § 102(g). 931 F.Supp. at 1033. Specifically, this court found that Drs. Erb and Su conceived their invention no later than November 1972,[3] and reduced it to practice in late September 1973. *Id.* Specifically, the Erb article includes test results of the device, which this court found constitute a showing of reduction to practice. An entry in Dr. Erb's notebook indicated a September 20, 1973 deadline for submission of the article. *Id.* at 1031. Therefore, Drs. Erb and Su had reduced their work to practice by that date. During the Sony proceedings, this court also found that Dr.

---

**3.** Dr. Su testified at the Sony trial in 1996 and produced a detailed contemporary laboratory notebook with a November 7, 1972 entry showing a buried channel device. *Loral II,* 931 F.Supp. at 1032.

Amelio conceived his invention in July 1973 and constructively reduced it to practice by filing a patent application in February 1974. *Id.* at 1030–31. Based on these findings, this court concluded that the Erb/Su work was § 102(g) prior art.

Seeking JMOL, Loral now asserts that the Erb/Su work is not prior art under § 102(g) because: (1) Dr. Erb did not practice all six steps of the '674 process; (2) the Erb/Su work does not corroborate conception of a process; and (3) the device in the December 3, 1973 Erb article does not corroborate performance of the claimed process.

As to its first assertion, Loral argues that because the Erb/Su process did not include limitation 6 of claim 1 of the '674 patent, the Erb/Su process cannot qualify as prior art under § 102(g). In other words, Loral contends that a prior invention under § 102(g) is not available as prior art for obviousness purposes unless the § 102(g) work anticipates at least one claim of the patent. Because the Erb/Su work does not anticipate claim 1, Loral would disqualify it as § 102(g) prior art for the purpose of § 103 obviousness.

 To Loral's credit, this contention is not new at this stage of the proceeding. On summary judgment, this court considered Loral's argument and rejected it as inconsistent with the law enunciated by the Federal Circuit. *Summary Judgment Order* at 9–14. Prior invention in this country by another who has not abandoned, suppressed, or concealed the invention is prior art for purposes of applying the obviousness standard of § 103. *Id.* at 10 (citing *Kimberly–Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 223 USPQ 603 (Fed.Cir.1984); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 231 USPQ 81 (Fed.Cir.1986); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 7 USPQ2d 1129 (Fed.Cir. 1988); and 2 Donald S. Chisum, *Patents,*

§ 5.03[3] (1994)). Thus, the Erb/Su work, if within the requirements of § 102(g), can qualify as prior art for § 103 obviousness. *Id.* at 14. In other words, section 102 of title 35 performs the dual functions of defining a single prior art reference that standing alone anticipates a claimed invention and of defining prior art references that do not anticipate but when combined with other prior art may render a claimed invention obvious under section 103. *See also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 150, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989) (prior art either anticipates or renders obvious a claimed invention); *Hodosh v. Block Drug Co.*, 786 F.2d 1136 (Fed.Cir.1986).

Thus, this court next assesses the sufficiency of the evidence to support the jury's determination that the Erb/Su work satisfies the terms of § 102(g). As discussed above, substantial evidence supports the jury's finding that the Erb/Su work is prior art under § 102(a). In reaching that finding, the jury had to have found that Dr. Amelio did not reduce to practice the '674 invention before the Erb article was published on December 3, 1973. The jury also had to have found that Dr. Amelio did not exercise reasonable diligence to reduce his process to practice beginning immediately before the Erb article was published and continuing up to the filing of the '674 application on February 8, 1974. Thus, *even assuming* that Drs. Erb and Su did not conceive and reduce to practice their CCD fabricating process until the date the Erb article was published, their work was still necessarily a prior invention with respect to Dr. Amelio's '674 invention. Moreover, the publication of their work in December 1973 obviates any credible claim of abandonment, suppression, or concealment of that work by Drs. Erb and Su. Accordingly, on this basis, the Erb/Su work that led up to the Erb article qualifies as prior art under § 102(g).

Independent of the jury's finding that the Erb article was prior art under § 102(a), substantial evidence still supports the jury's finding that the Erb/Su work was a prior invention with respect to Dr. Amelio's invention. Loral questions whether the record shows sufficient corroboration of Dr. Su's conception of a prior art process. Contrary to Loral's assertion, a reasonable jury could have found Dr. Erb's testimony to a November 7, 1972 conception date both credible and corroborated by Dr. Su's notebook entry on that date and other notebook entries and testimonies. TR 1055–58, 1071–1127; Toshiba Ex. 23, 25, 26, 28, 30, 31, 33, 34, 37, 40, 42, 46.

Dr. Su's notebook disclosed a structure, not a process. The jury, however, heard extensive testimony that conception of a structure discloses to one of skill in this art a process for fabrication. *See e.g.,* TR 979, 1367–68, 1392, 1463–64. Indeed Loral did not present any witness to contest that the Su structure could be made by a process other than that described in the Erb article. Indeed, Dr. Erb testified that he learned of Dr. Su's invention about the time of its conception and undertook to reduce it to practice. *Id.* For instance, another notebook entry showed that Dr. Erb undertook to make a buried channel CCD in accordance with the Su conception in April of 1973—further confirming the earlier conception. Toshiba Ex. 31; TR 1079–86.

Thus, these notebook entries offer ample support for his account of Dr. Su's conception. Moreover, these extensive and detailed notebook entries provide ample support for the jury's finding that the record shows Dr. Su's prior conception of the process described in the Erb article.

Finally, Loral also challenged the corroborating evidence for the Erb/Su reduction to practice. On this record, a reasonable jury could have found that Drs. Erb and Su conceived of their process and reduced it to practice no later than September 20, 1973, the submission date for the Erb article. TR 1106–07, 1283–84. The results reported in the Erb article—three oscilloscope printouts showing output from a working CCD—constituted a reduction to practice because they showed that the process described in the article worked for its intended purpose. Dr. Erb also testified about the reduction to practice. TR 1048.

On the other hand, a reasonable jury could have found the testimonies of Drs. Amelio and Wen, and Ms. Manuoliu less credible and insufficiently corroborated by other evidence to establish a conception date by Dr. Amelio earlier than November 7, 1972, and a reduction to practice date earlier than September 20, 1973. A most favorable view of the evidence sets Dr. Amelio's conception in July 1973, and his constructive reduction to practice by filing a patent application in February 1974.

In sum, substantial evidence supports the jury's finding that the Erb/Su work is prior art under § 102(g). A reasonable jury could have relied on the witness testimonies and the documentary evidence to find that Dr. Amelio did not reduce to practice the '674 invention before Drs. Erb and Su's reduction to practice, and Dr. Amelio did not exercise reasonable diligence to reduce his process to practice beginning immediately before publication of the Erb article and continuing up to the filing of the '674 application on February 8, 1974.

### 3. *Validity of claim 1 of the '674 patent*

 Loral argues that claim 1 of the '674 patent is not invalid as obvious in view of the Erb article or the Erb/Su work because the Erb article and Erb/Su work are not prior art. As discussed above, the record provides ample support for the

jury's finding that the Erb article and Erb/Su work are indeed prior art under § 102(a) and § 102(g), respectively. Thus, the only question remaining is whether claim 1 is obvious in view of the Erb article or the Erb/Su work.

Dr. Erb testified that the Erb article expressly discloses the first five limitations of claim 1 of the '674 patent. TR 1035–41. Dr. Bower agreed. TR 1422–26. Although the Erb article does not explicitly disclose limitation 6 of claim 1, which requires connecting a single first gate electrode to a single adjacent second gate electrode as part of the CCD wafer fabrication process, the record supplies plentiful evidence that the article implicitly disclosed that step as part of the testing of the CCD. TR 1040, 1426–28. Moreover, the record shows that the technique of making such connections on CCD chips as part of the wafer fabrication process was well known in the art. *Id.; see also* TR 1429, 1613, 1772. In fact, Ms. Manoliu, one of Loral's witnesses, conceded that skilled artisans in 1973 knew the method of practicing step 6. TR 1772. Moreover two other prior art references, Walden and Anantha, disclose electrode connections on the chip as part of the fabrication process. Toshiba Ex. 1055.11, 1056.12. Accordingly, considering the Erb article in combination with knowledge of skill in the art and the Walden and Anantha references, the jury could reasonably have found that claim 1 would have been obvious in view of the Erb article. For the same reasons, the jury also could have found that claim 1 would have been obvious in view of the Erb/Su work.

In addition to presenting the Erb article, Toshiba also presented the jury with other prior art, namely Walden and Anantha, which together and in combination with Erb could have supported the jury's verdict. Loral contends that Walden and Anantha do not render claim 1 obvious.

With respect to the Walden reference, the jury could reasonably have relied on the testimony of Drs. Walden and Bower that the '674 process would have been obvious over the Walden patent. TR 934–38, 940–43, 946–53, 1412–1422. These witnesses showed step by step the disclosure of the claimed Amelio process in the Walden reference with the exception that Walden's implanted regions are wells rather than barriers. The record, however, supports the jury's possible finding that one of skill in the art would know to practice the Walden process with barriers in place of wells.

Loral contests the substitution of implanted barriers for implanted wells. The testimony of Drs. Walden and Bower, however, supports that wells and barriers are equivalent and the decision to use one or the other is a design choice within the knowledge of one of skill in this art in 1973. TR 917–18, 1407, 1420–21. According to Dr. Bower, the Mohsen prior art reference teaches that wells and barriers are interchangeable. TR 1407; Toshiba Ex. 52 at 398. Furthermore, the Erb article suggests using implanted barriers. Thus, the jury could reasonably have found that it would have been obvious to practice the Walden process, substituting Erb's implanted barriers for the implanted wells. The Erb article suggests the combination by explaining one of its advantages: "[T]he charge is stored under the silicon electrode [the first gate] which is the most efficient use of storage area for small CCDs." Toshiba Ex. 17 at 24, Col. 2. Storing the charge under the first gate electrode is an advantage achieved by using implanted barriers rather than implanted wells.

Loral further argues that Walden does not teach having the first gate electrodes formed on the same material at roughly the same thickness as required by the '674

process. This court has construed previously that claim 1 of the '674 patent requires only that the thickness of the insulation under the second gate electrodes be "roughly the same" as the thickness under the first gate electrodes. *Loral I,* 906 F.Supp. at 806. More important, Erb teaches uniform insulation thickness. Therefore, the jury could reasonably have found that one of skill in the art would combine Erb with Walden to achieve that benefit. Indeed, Erb suggests the combination by describing the practical advantages of uniform insulation thickness: "The fact that the insulator can be uniformly thin (600 – 1200A) for all electrodes means that the channel potential is better controlled." Toshiba Ex. 17 at 24, Col. 2. In sum, substantial evidence supports that claim 1 of the '674 patent would have been obvious over the Walden patent in combination with knowledge of skill in the art or Erb.

As to the Anantha reference, the jury also could reasonably have relied on the testimony of Drs. Walden and Bower that the '674 process would have been obvious over the Anantha reference. Loral contends that Anantha cannot render the '674 process obvious because it discloses a structure, not a process. The testimony of Drs. Walden and Bower, however, supports the proposition that a person skilled in the art in 1973 would have known the process steps required to make a given structure. TR 979,1367–68, 1463–64. Furthermore, this court previously has noted that a diagram may disclose processes that a person skilled in the art would know could be used to make the structure. *Loral II,* 931 F.Supp. at 1032 n. 4.

Loral also asserts that it is not clear that Anantha teaches forming the barriers by diffusion or ion implantation as required by the '674 process. The record shows, however, that a person skilled in the art in 1973 would have been aware of self-aligned ion implantation as a substitute for diffusion. TR 1387–89. Indeed, Dr. Bower's '712 patent taught exactly this substitution in 1969. Toshiba Ex. 81. Once again, the Bower '712 patent would suggest the combination by revealing the superiority of the ion implantation method. *Id.* at 2:68–3:6. Moreover, the jury could reasonably have relied on Dr. Bower's testimony that it would have been obvious to modify Anantha by using the ion implantation technique rather than diffusion. *Id.* In conclusion, substantial evidence supports the jury's finding that claim 1 of the '674 patent is invalid for obviousness using several different possible combinations of Erb, Walden, Anantha, Mohsen, and Bower, as understood and applied by one of skill in this art in 1973.

### New Trial

As an alternative to JMOL, a court should grant a Rule 59 motion for a new trial if it determines that prejudicial error occurred or that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Santa Maria v. Metro–North Commuter R.R.,* 81 F.3d 265, 273 (2d Cir. 1996) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)). A grant of a new trial on the ground that the verdict is against the weight of the evidence is appropriate if "the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir.1998) (citation omitted). In determining whether the jury's verdict is so "seriously erroneous" as to justify a new trial, the trial judge may freely weigh the evidence and "need not view it in the light most favorable to the verdict winner." *Id.* at 133–34.

Loral seeks a new trial on the theory that the jury verdict is against the clear weight of the evidence and because prejudicial errors occurred during trial. Specifically, the errors involved: (1) Defendants' alleged misuse of the divisional structure patent application; (2) Toshiba counsel's references to the outcome of the Sony litigation; (3) an alleged improper jury instruction concerning the prior art status of the Erb article and Erb/Su work; and (4) Toshiba's surprise introduction of a misaligned mask set exhibit.

As discussed above, substantial evidence supports the jury verdict. Upon reweighing the evidence, this court does not find that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice that warrants a new trial. *Id.* at 133.

■ As to the first alleged prejudicial error, Loral contends that this court erred in admitting evidence about the divisional structure application. Upon reconsidering this question, this court determines again that this evidence was relevant and free of any unfair prejudice. In the first place, the Federal Circuit itself found the prosecution history of the divisional application relevant to the '674 patent. *Loral III*, 181 F.3d at 1325–26. Moreover, as discussed above, substantial evidence supports the obviousness of the '674 process in light of the Erb article and the Anantha reference, which were cited in the examiner's rejection in the divisional structure application. The divisional application was thus relevant to the question of whether Erb was prior art and also to obviousness questions, such as the grounds for distinguishing Anantha. In any event, admission of the divisional application was not prejudicial to Loral. Loral does not identify any place in the record where a witness referred to

the divisional application without clearly identifying it as such. *See e.g.,* TR 1435. Thus, the jury would not have confused the examiner's rejections of the divisional with the PTO's granting of the '674 patent.

■ With respect to the second alleged error, this court rejects Loral's claim that the jury's verdict is "the direct result of Toshiba counsel's highly prejudicial and misleading closing argument concerning the infringement issue." Citing to the trial record, Loral argues that Toshiba's references to the outcome of the 1996 Sony trial and counsel's comparison of the accused processes with prior art were prejudicial and confusing. In the first place, the references to the Sony trial were not improper because they accurately reflected the evidence that had been admitted without objection.[4] More important, this court gave a corrective instruction that dispelled any risk, however small, of prejudice from this reference in closing arguments. TR 1877. Specifically, this court instructed the jury: "Any references to the Sony trial are not relevant to this case." *Id.* Loral's counsel appeared satisfied with the instruction. *Id.*

■ As to the third alleged error, for Loral to obtain a new trial based on an erroneous jury instruction, Loral must show: "(1) it made a proper and timely objection to the jury instructions, (2) the instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error." *Advanced Display Sys., Inc. v. Kent State Univ.,* 212 F.3d 1272, 1281, 54 USPQ2d 1673, 1679 (Fed.Cir.2000), *cert denied,* 532 U.S. 904, 121 S.Ct. 1226, 149 L.Ed.2d 136 (2001) (citations omitted). Loral objected

---

**4.** In its closing argument, Toshiba made reference to a statement by Mr. Karambelas that "[Loral] did not prevail against Sony" in the

1996 trial. TR 1853–54. During trial, Loral did not object to Toshiba's questioning of Mr. Karambelas or move to strike his testimony.

to the prior art jury instruction before submission to the jury. Specifically, Loral objected to the language describing the Erb/Su work "that led up to the Erb article" and requesting the jury to determine whether "Drs. Erb and Su reduced to practice a process that produced the device disclosed in the December 3, 1973 article." Jury Instructions at 8; TR 1735–36.

 Loral argues that the jury instruction was erroneous because the Erb/Su work cannot constitute prior art unless Drs. Erb and Su conceived and reduced to practice a CCD manufacturing process that includes "all six steps of the '674 process." As discussed earlier, under current Federal Circuit law, the Erb/Su work, if proved to meet the requirements of § 102(g), can qualify as prior art for § 103 obviousness. Moreover, the jury had other prior art and other bases to support its finding of invalidity. The jury instruction was therefore proper and this court need not reach the other elements of the inquiry.

Finally, with respect to the fourth alleged error, Loral asserts that this court should have instructed the jury to disregard the misaligned exhibit[5] and the testimony of Dr. Wen during cross examination. This court rejects Loral's contention that the relief granted was inadequate. This court allowed Loral to conduct redirect examination of Dr. Wen on the mask set alignment and an additional examination of Ms. Manoliu to confirm Dr. Wen's testimony on the issue and denied Toshiba any further cross-examination on the subject—making Loral's double correction of the error the overwhelming impression for the jury. TR 675–76, 780. To restate, this court, after consulting with counsel, gave Loral an immediate double correction—calling

Ms. Manoliu out of order to emphasize the correction—and did not permit Toshiba to conduct re-cross examination of Dr. Wen. Nor did this court permit Toshiba to cross examine Ms. Manoliu. Loral took full advantage of this corrective action. TR 681–83, 686–88. Thus, Loral received adequate relief from Toshiba's surprise introduction of the misaligned mask set exhibit. In sum, a new trial is not warranted because the jury verdict is not against the clear weight of the evidence and because prejudicial errors did not occur during trial.

CONCLUSION

For the reasons set forth above, this court denies Loral's motion for judgment as a matter of law or, alternatively, for a new trial, under Rules 50 and 59.

---

5. During its cross-examination of Dr. Wen concerning the September 14, 1973 mask set, Toshiba presented a mask set exhibit not produced previously. Subsequent review of the exhibit revealed that it was misaligned such that it conflicted with Dr. Wen's direct testimony.